**Irene S. BURNS, as Administratrix of the Estate of Robert James Burns, deceased, Plaintiff,**

v.

**MARINE TRANSPORT LINES, INC., (sued herein as Marine Transport Company), Defendant.**

United States District Court
S. D. New York.
July 9, 1962.

Spero V. Soupios, New York City, for plaintiff. Anthony M. Lanzone, New York City, of counsel.

Cadwalader, Wickersham & Taft, New York City, for defendant. George M. Vetter, Jr., New York City, of counsel.

FEINBERG, District Judge.

Defendant has moved for judgment on the pleadings under Rule 12(c), Fed. Rules Civ.Proc., 28 U.S.C.A., claiming that certain of plaintiff's claims are either time barred or legally insufficient. The action is brought by a seaman's administratrix who sets forth what at first glance appears to be two but is actually four causes of action. All rest upon the same alleged facts: while plaintiff's intestate was a crewman aboard defendant's vessel, the "Marine Trader," he was served and ate poisonous barracuda meat on July 25, 1955, which caused serious injury, required his hospitalization and eventually brought about his death on March 5, 1958.

The "first" cause of action is for plaintiff's intestate's pain and suffering prior to death ("pain and suffering action") and the "second" is for damages for his death ("wrongful death action"). Each "cause of action," however, is based on two distinct theories, negligence under the Jones Act, 46 U.S.C.A. § 688, and unseaworthiness, which have been commingled. Plaintiff has consequently set forth a pain and suffering action and a wrongful death action based both on negligence under the Jones Act and unseaworthiness, making four in all, and her complaint and defendant's motion will be considered from the perspective of this analysis.[1] For reasons set forth below, two of these are dismissed—the pain and suffering action under the Jones Act and the wrongful death action based on unseaworthiness.

**I**

Defendant claims that the "first cause of action for personal injuries" is barred by a three-year limitation period. 45 U.S.C.A. § 56.[2] As stated above, the "first" cause of action sets forth both Jones Act and unseaworthiness pain and suffering actions. Defendant's contention will first be considered as to the Jones Act pain and suffering action.

The Jones Act, by incorporating provisions of the Federal Employers' Liability Act, creates two causes of action for negligence—"One is for the wrong to the injured person and is confined to his personal loss and suffering before he died, while the other is for the wrong to the beneficiaries and is confined to their pecuniary loss through his death."[3] The action for decedent's pain and suffering accrues at the time of injury, while the wrongful death action accrues at death. Reading Co. v. Koons, 271 U.S. 58, 46 S.Ct. 405, 70 L.Ed. 835 (1926); O'Neill v. Cunard White Star Ltd., 69 F.Supp. 943 (S.D.N.Y.1946); Rodzik v. New York Central R. R., 169 F.Supp. 803 (E.D.Mich.1959). Plaintiff began her action by filing a complaint on December 28, 1959. This date is more than three years after the date on which her intestate was injured, and her Jones

---

1. Negligence and unseaworthiness need not be separately pleaded in the complaint. Kelley v. Midland S.S. Line, Inc., 162 F.Supp. 68 (W.D.N.Y.1956). The complaint states in both "causes of action" that the action is brought under the Jones Act, but goes on to allege, *inter alia*, that the vessel was maintained and provisioned in an "unseaworthy" manner. While the unseaworthiness claim could have been pleaded with more clarity, it is unquestionably pleaded.

Claussen v. Mene Grande Oil Co., C.A., 275 F.2d 108, 111 (3 Cir. 1960).

2. This is the statute of limitations under the Federal Employers' Liability Act which the Jones Act incorporates by reference. 46 U.S.C.A. § 688.

3. St. Louis, Iron Mountain & Southern Ry. v. Craft, 237 U.S. 648, 658, 35 S.Ct. 704, 59 L.Ed. 1160 (1915); Van Beeck v. Sabine Towing Co., 300 U.S. 342, 346–347, 57 S.Ct. 452, 81 L.Ed. 685 (1937).

Act pain and suffering action is, therefore, time barred.[4] Defendant has not claimed that plaintiff's Jones Act wrongful death action (which is part of the "second" cause of action) is time barred, and, of course, it remains.[5]

## II

There remains for consideration, however, the timeliness of so much of the "first" (pain and suffering) cause of action as is based on unseaworthiness. The unseaworthiness action was not created by the Jones Act, and was known to the general maritime law prior to the enactment of that statute, The Osceola, 189 U.S. 158, 175, 23 S.Ct. 483, 47 L.Ed. 760 (1903), although in skeletal form compared to its present robust and ever-expanding shape. It is theoretically not grounded in, and is distinct from, the negligence for which a Jones Act action affords redress. Congress has enacted no limitation period specifically for unseaworthiness actions and precedent indicates that, despite defendant's contention to the contrary, the Jones Act limitations period is inapplicable.

In McAllister v. Magnolia Petroleum Co., 357 U.S. 221, 78 S.Ct. 1201, 2 L.Ed. 2d 1272 (1958), the Supreme Court held that a state court may not apply to an unseaworthiness action a state statute which provides for a limitations period shorter than the Jones Act period, reasoning that this would limit the Jones Act right of action which the plaintiff must join with his unseaworthiness suit if he wishes to sue on both theories. The Court expressly left open the question of " * * * whether a state court is free to apply its own statutes of limitation to an admiralty right of action for which no special limitation is prescribed, or whether it is bound to determine the timeliness of such actions by the admiralty doctrine of laches." (at 357 U.S. 224 at 78 S.Ct. 1203).[6]

There is compelling authority in this Circuit for applying the doctrine of laches to unseaworthiness actions and state statutes of limitations as convincing but not inflexible guides when the laches doctrine is used. In LeGate v. The Panamolga, 221 F.2d 689 (2 Cir. 1955), the Court of Appeals reversed a District Court's holding that, inter alia, a longshoreman's admiralty action for unseaworthiness was barred by laches because New York's three-year limita-

4. Plaintiff's brief argues only that the pain and suffering action based upon unseaworthiness is timely and does not defend the timeliness of her Jones Act pain and suffering action. Plaintiff has not, therefore, contended that the timeliness of the unseaworthiness pain and suffering action (which is discussed in Point II, below) can "save" the similar Jones Act action. Cf. Campanile v. Societa G. Malvicini, 170 F.Supp. 667 (S.D.N.Y. 1959), which would appear to be distinguishable on its facts (delay of only four months after running of statute of limitation compared to 17 months in this case). I have found no other authority for allowing an extension beyond three years of the limitations period applicable to a Jones Act action through application of a state limitations period to a related, but necessarily distinct, unseaworthiness action. LeGate v. The Panamolga, 221 F.2d 689 (2 Cir. 1955), upon which Campanile rests, was a decision in which the Court of Appeals, after reversing the District Court's decision that a claim for unseaworthiness

was barred by laches, also reversed a similar judgment on a negligence cause of action. But that case was a longshoreman's action, to which, unlike Jones Act suits, no federal statutory limitations period is applicable.

5. Since plaintiff's decedent's death occurred less than three years after the original injury, there is no need to consider whether the representative's wrongful death action is barred if the decedent's action under the Jones Act was already barred at the time of his death. Compare Dusek v. Pennsylvania R. R., 68 F.2d 131 (7 Cir. 1933) with Flynn v. New York, New Haven & Hartford R. R., 283 U.S. 53, 51 S.Ct. 357, 75 L.Ed. 837 (1931).

6. Three Justices dissented, on the theory that absent a federal limitations period, the state courts could apply any relevant state limitations period, even a shorter one. Only one Justice, concurring, took the view that the Jones Act period should apply (357 U.S. at 229, 78 S.Ct. 1201).

tions on actions for negligence had run. The Court of Appeals distinguished negligence from unseaworthiness and held that as to the cause of action based on the latter theory, the analogous statute for determining laches was § 48(3) of the New York Civil Practice Act, which imposes a six-year period of limitations on actions for personal injuries other than negligence actions. See also Campanile v. Societa G. Malvicini, 170 F. Supp. 667 (S.D.N.Y.1959).

After LeGate, the same Court, in Oroz v. American President Lines, Ltd., 259 F.2d 636 (2 Cir. 1958), held that the doctrine of laches and not a state statute of limitations should be applied to unseaworthiness actions, even if brought on the law side. The state statute of limitations which would otherwise be applicable was not thereby rendered irrelevant, however. The Court applied the relevant New Jersey statute by analogy as a "rule-of-thumb" in determining whether plaintiff's delay was inexcusable (259 F.2d at 639). Subsequent decisions in this Court, whenever New York law furnished the appropriate analogy, have continued to apply the six-year statute applied in LeGate in deciding the timeliness of unseaworthiness actions under the laches doctrine, Hernandez v. The SS Flying Arrow, 181 F. Supp. 951 (S.D.N.Y.1959); Phillips v.

The Hellenic, 179 F.Supp. 5 (S.D.N.Y. 1959); Campanile v. Societa G. Malvicini, 170 F.Supp. 667 (S.D.N.Y.1959); contra, Baez-Geigel v. American Foreign S.S. Corp., 171 F.Supp. 359 (S.D.N.Y. 1959).

█ On the bare record before me, it is not clear what state statute of limitations might appropriately be considered as an analogy in applying the doctrine of laches.[7] The decisions referred to above make clear that if New York law is to be looked to, then the six-year period of N.Y.C.P.A. § 48(3) furnishes the appropriate analogous measure of timeliness.[8] Defendant has not raised the issue of laches on this motion, although laches is pleaded in its answer. On this record, then, I deny so much of defendant's motion based on the three-year Jones Act statute of limitations as applied to the pain and suffering claim based upon unseaworthiness. This denial, however, is without prejudice to defendant's right to raise at an appropriate time the issue of laches or the issue of which state's survival statute applies.[9]

No contention is made that the wrongful death claim based upon unseaworthiness is untimely. However, defendant does argue that this cause of action is defective and should be dismissed because

7. It may be that the statute of limitations of a state other than New York is applicable as appropriate analogy. Presumably, the law of the place of injury would apply if the injury occurred within the territorial waters of a state. If the cause of action arose on the high seas, alternative choices of law might also be considered: the law of the flag, or, if the vessel is American, of the owner's domicile or state of incorporation; the decedent's domicile; the law of the forum; under certain circumstances, the law of the state to which the shipowner owes allegiance and the law of the place where the seaman signed his employment contract may assume importance. See note 9 below.

8. Even if New York law furnishes the analogy, the six-year period is not in-

flexibly applied. Evan v. American Export Lines, Inc., 175 F.Supp. 386 (S.D. N.Y.1959).

9. Plaintiff suggests as applicable survival statutes of two states: Delaware and New York, the former apparently on the assumption that Delaware is the state of incorporation of defendant (although this is not admitted on the record before me). See generally on the problem of which survival statute would furnish the source of plaintiff's right to sue, if such right there be, Comment, 60 Colum. L.Rev. 534, 543–551 (1960) and the authorities cited therein; see also, Lauritzen v. Larsen, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953); Petition of Gulf Oil Corp., 172 F.Supp. 911, 915–920 (S.D.N.Y.1959).

a wrongful death action based upon unseaworthiness does not exist under general maritime law and, therefore, fails to state a claim upon which relief can be granted. Defendant does not make this contention with regard to the pain and suffering action based upon unseaworthiness and confines itself there to the argument, already discussed, that that action is untimely. Therefore, it is necessary now to consider whether the wrongful death action based upon unseaworthiness fails to state a claim upon which relief may be granted.

## III

■ Two principal sources suggest that there cannot be a wrongful death action based upon unseaworthiness: one is the old, and frequently cited, general maritime rule that death ends the right to sue;[10] the other is Lindgren v. United States, 281 U.S. 38, 50 S.Ct. 207, 74 L.Ed. 686 (1930).

The Supreme Court held in Lindgren that an action under the Jones Act for the negligently caused death of a seaman may be brought by no representative of the decedent other than one specifically named in the statute; in the absence of such a beneficiary, a death action for negligence could not be brought under the general maritime law or a state wrongful death statute. The Court held that the Jones Act, Congress' attempt to fashion remedies for seamen and certain of their beneficiaries for injuries or death caused by negligence, had to be deemed the "paramount and exclusive" source of such remedies, one which "supersedes the operation of all state statutes dealing with that subject." Lindgren v. United States, supra, 281 U.S. at p. 47, 50 S.Ct. 207, at p. 211, 74 L.Ed. 686. In a *dictum*, the Court stated that had the libel in the case before it been based on unseaworthiness, it would also have concluded that the Jones Act excluded the operation of state

wrongful death acts for the purpose of making an unseaworthiness claim (281 U.S. at 48, 50 S.Ct. at 211):

"* * * the right of action given the personal representative by the second clause of § 33 to recover damages for the seaman's death when caused by negligence, for and on behalf of designated beneficiaries, is necessarily exclusive *and precludes the right of recovery of indemnity for his death by reason of unseaworthiness of the vessel, irrespective of negligence, which cannot be eked out by resort to the death statute of the State in which the injury was received.*" (emphasis supplied).

Therefore, consideration of defendant's motion, to the extent that it is directed to plaintiff's wrongful death claim based upon unseaworthiness, would stop with the citation of Lindgren, if development of the law pertaining to seamen's rights to recover for injury had also stopped with Lindgren. However, in the years since that case was decided, the unseaworthiness doctrine has been expanded so that it, and not the Jones Act, "has become the principal vehicle for personal injury recovery." Gilmore and Black, Admiralty 315 (1957). As unseaworthiness has expanded, so too has the application of state survival and wrongful death statutes, which have often been construed to allow survivors of shore-based maritime workers to sue under the unseaworthiness doctrine for injuries to, and the death of, their decedents. The implacable effect of death on causes of action under the general maritime law has been blunted by recent decisions.

Prior to the enactment of the Jones Act, suit under state wrongful death statutes could be brought in admiralty when the cause of death was a maritime tort occurring within the navigable waters of a state, Western Fuel Co. v. Gar-

---

10. "Death is a composer of strife by the general law of the sea as it was for many centuries by the common law of the land." Cortes v. Baltimore Insular Line,

Inc., 287 U.S. 367, 371, 53 S.Ct. 173, 77 L.Ed. 368 (1932); cf. Gilmore and Black, Admiralty 302–303 (1957).

cia, 257 U.S. 233, 242, 42 S.Ct. 89, 66 L. Ed. 210 (1921). Later decisions, particularly within the last few years, have seen the courts willing to draw on state survival and wrongful death statutes to avoid the traditional maritime rule of nonsurvivability. The Supreme Court has allowed state statutes to alter the general maritime rule that a tortfeasor's liability dies with the tortfeasor, Just v. Chambers, 312 U.S. 383, 668, 61 S.Ct. 687, 85 L.Ed. 903 (1941) (action by guests against deceased yacht owner for injuries suffered in navigable waters within state); cf. Cox v. Roth, 348 U.S. 207, 75 S.Ct. 242, 99 L.Ed. 260 (1955) (Jones Act death action survives death of tortfeasor). Death did not prevent a maritime remedy in The Tungus v. Skovgaard, 358 U.S. 588, 79 S.Ct. 503, 3 L.Ed.2d 524 (1959). The Supreme Court there allowed the representative of a shoreside worker killed in the territorial waters of New Jersey to recover for unseaworthiness under that state's wrongful death statute. Longshoremen's personal representatives have been allowed to sue under the unseaworthiness doctrine applied by way of a state wrongful death statute, e. g. Holley v. The Manfred Stansfield, 269 F.2d 317 (4 Cir. 1959), and for negligence under state survival and wrongful death statutes, O'Leary v. United States Lines Co., 215 F.2d 708 (1 Cir. 1954), cert. denied, 348 U.S. 939, 75 S.Ct. 360, 99 L.Ed. 735 (1955).

In Holland v. Steag, 143 F.Supp. 203 (D.Mass.1956), the administratrix of a seaman brought suit for her intestate's wrongful death and for pain and suffering prior to death, alleging negligence under the Jones Act and also the vessel's unseaworthiness. The Court, citing Lindgren, dismissed plaintiff's unseaworthiness cause of action for wrongful death under the general maritime law. It denied, however, a motion to dismiss the unseaworthiness cause of action for pain and suffering prior to death, on the ground that the Massachusetts survival statute preserved the action even though the injury "presumably" occurred on the high seas.[11]

Notably, Holland has been cited with approval by the Supreme Court in Kernan v. American Dredging Co., 355 U.S. 426, 78 S.Ct. 394, 2 L.Ed.2d 382 (1958). There the Court permitted dependents of a deceased seaman to sue for his death under the Jones Act, even though they did not allege negligence. The decision rested upon proof of violation of a safety regulation under Section 1 of the Federal Employers' Liability Act, which is sufficient to impose liability even though no negligence is shown. After referring to Lindgren, the Court specifically refrained from comment on the petitioner's contention that he could bring a wrongful death action for unseaworthiness. It indicated, however, that an unseaworthiness action could be brought under the Death on the High Seas Act if the death occurred beyond a marine league from

11. The court, *inter alia*, relied on The Hamilton, 207 U.S. 398, 28 S.Ct. 133, 52 L.Ed. 264 (1907), in which the Supreme Court, applying a Delaware wrongful death statute, permitted an action against a Delaware corporation for death on the high seas due to negligence. In that case, Mr. Justice Holmes said: "The same argument that deduces the legislative power of Congress from the jurisdiction of the National courts, tends to establish the legislative power of the State where Congress has not acted." 207 U.S. at 404, 28 S.Ct. at 134. In Romero v. International Terminal Operating Co., 358 U.S. 354, 373, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959), Mr. Justice Frankfurter said: "It is true that state law must yield to the needs of a uniform federal maritime law when this Court finds inroads on a harmonious system. But this limitation still leaves the States a wide scope. * * * State remedies for wrongful death and state statutes providing for the survival of actions, both historically absent from the relief offered by the admiralty, have been upheld when applied to maritime causes of action. Federal courts have enforced these statutes [citing The Hamilton, supra; Western Fuel Co. v. Garcia, 257 U.S. 233, 42 S.Ct. 89, 66 L.Ed. 210 (1921); Just v. Chambers, 312 U.S. 383, 668, 61 S.Ct. 687, 85 L.Ed. 903 (1941)]" See also, 70 Harv.L.Rev. 1095 (1957).

shore,[12] and it added "Presumably any claims, based on unseaworthiness, *for damages accrued prior to the decedent's death would survive*, at least if a pertinent state statute is effective to bring about a survival of the seaman's right [citing Holland v. Steag, Inc.]" 355 U.S. at 430, n. 4, 78 S.Ct. at 397. (emphasis supplied).

This court has followed Holland v. Steag on at least one occasion. In McLaughlin v. Blidberg Rothchild Co., 167 F.Supp. 714 (S.D.N.Y.1958), a cause of action under the general maritime law for a seaman's wrongful death caused by unseaworthiness was dismissed, but a cause of action for the decedent's pain and suffering before his death also based on unseaworthiness was allowed to stand, because a statute of the state of defendant's incorporation preserved for the benefit of the seaman's personal representative the decedent's right to sue.

However, while the courts have been applying state survival and wrongful death statutes to maritime torts to an extent that has caused one commentator to note in recent decisions "a discernible drift towards increased application of state substantive law in maritime tort situations", Harolds, Maritime Death Claims and the Applicability of State Law, 35 Tul.L.Rev. 85, 86 (1960), they have not applied state statutes to permit seamen's representatives to sue for wrongful death based upon unseaworthiness. As already indicated, despite its express assumption that a pain and suffering action might be brought under a state statute after a seaman's death, the Supreme Court in Kernan made no parallel allusion to a wrongful death ac-

tion based upon unseaworthiness despite petitioner's express contention that such an action could be brought. Instead, the Court referred to the Death on the High Seas Act. Other courts have affirmatively refused to permit wrongful death actions for unseaworthiness. Some of the decisions permitting suit under survival statutes for pain and suffering actions based on unseaworthiness simultaneously dismissed causes of action purporting to state wrongful death actions for unseaworthiness under the general maritime law, Holland v. Steag, supra, McLaughlin v. Blidberg Rothchild, supra.[13]

Moreover, two prior decisions of this Court are directly in point. In Bath v. Sargent Line Corp., 166 F.Supp. 311 (S.D.N.Y.1958), an action by a seaman's personal representative, Judge Dimock dismissed causes of action for negligence and unseaworthiness under the New Jersey wrongful death statutes, saying (166 F.Supp. at 312):

> "There is no escape from this conclusion unless Lindgren v. United States * * * is no longer authoritative.
>
> * * * * * *
>
> " * * * Since the Jones Act withholds any right of action for death due to unseaworthiness and prevents the assertion of any such right of action under state law, no means of recovery for death due to unseaworthiness is available to the seaman's representative under either federal or state law."

In Robbins v. Esso Shipping Co., 1960 AMC 365, 366 (S.D.N.Y.1959), Judge

12. The Supreme Court in Lindgren specifically refused to address itself to the relationship between the Jones Act and the Death on the High Seas Act, 281 U.S. at 48, 50 S.Ct. 207, 74 L.Ed. 686. See Gilmore and Black, Admiralty 304: "While the Supreme Court has never decided the point, the lower courts are in agreement that the Jones Act is not exclusive and that a seaman's personal representative can sue under either Act and, occasionally, under both."

13. Accord, Fall v. Esso Standard Oil Co., 297 F.2d 411, 417 (5 Cir. 1961) ("We feel compelled to hold that the general maritime law, unaided by the Jones Act, anomalously, archaically, unnecessarily in terms of general principles, gives Fall's widow and administratrix no right of action.") ; cf. Turcich v. Liberty Corp., 217 F.2d 495 (3 Cir. 1954), cert. denied, 350 U.S. 983, 76 S.Ct. 470, 100 L.Ed. 851 (1956).

Bryan, in dismissing causes of action for the death of a seaman purporting to sound in unseaworthiness under the Jones Act, general maritime law, and the New Jersey wrongful death statute, remarked:

"Since Lindgren v. United States, * * * it has been clear that in an action to recover for the death of a seaman caused by the negligence of his employer, the remedy under the Jones Act is paramount and exclusive and precludes any right to recovery for negligence under the New Jersey death statute, or for unseaworthiness under federal or state law."

Accord, de Hyman v. M/V Montego, 1960 AMC 360 (S.D.Fla.1959); see Kunschman v. United States, 54 F.2d 987, 989 (2 Cir. 1932); Halecki v. United New York & New Jersey Sandy Hook Pilots Ass'n, 251 F.2d 708, 712 (2 Cir. 1958) rev'd on other grounds, 358 U.S. 613, 79 S.Ct. 517, 3 L.Ed.2d 541 (1959), in which Judge Learned Hand said "It is common ground that the liability for breach of the warranty of unseaworthiness does not survive under the maritime law."

The post-Lindgren authorities indicate that the lower courts have permitted pain and suffering actions based upon unseaworthiness while refusing to permit wrongful death actions based on the same theory. In the light of the important developments in maritime law since 1930, reexamination may be called for of Lindgren [14] and the entire relationship between the Jones Act and the unseaworthiness doctrine.[15] But on the present state of the law I feel that so much of plaintiff's wrongful death claim as is based upon unseaworthiness must be dismissed. As indicated above, de-

fendant's only objection to the pain and suffering claim based on unseaworthiness is its alleged untimeliness. This contention is rejected for the reasons set forth in Point II above.

Defendant's motion for judgment on the pleadings is granted as to so much of the first cause of action as asserts a claim under the Jones Act for plaintiff's intestate's pain and suffering, and as to so much of the second cause of action as asserts a claim under the unseaworthiness doctrine for plaintiff's intestate's wrongful death.

Settle order on notice.

---

14. Judge Learned Hand has expressed doubt whether Lindgren would have been decided the same way in 1950. See Gill v. United States, 184 F.2d 49, 57 (2 Cir. 1950) (dissenting opinion).

15. See, e. g., concurring opinion of Judge Lumbard in Bartholomew v. Universe Tankships, Inc., 263 F.2d 437, 448 (2 Cir. 1959), cert. denied, 359 U.S. 1000, 79 S. Ct. 1138, 3 L.Ed.2d 1030 (1959); Fall v. Esso Standard Oil Co., 297 F.2d 411, 417 (5 Cir. 1961); Gilmore and Black, Admiralty 303.