216 F.3d 228 (2nd Cir. 2000)
 In re: UNITED STATES LINES, INC.,
UNITED STATES LINES (S.A.) INC., Debtor.
MARITIME ASBESTOSIS LEGAL CLINIC, Appellant,
v.
UNITED STATES LINES, INC., UNITED STATES LINES (S.A.) INC., Appellees.
 Docket No. 99-5046
August Term, 1999
 UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
 Argued: January 20, 2000
Decided: June 16, 2000
 
 Appeal from an order of the United States District Court for the Southern District of New York (Michael B. Mukasey, Judge), denying appellant's motion for reconsideration under Rule 60 of the Federal Rules of Civil Procedure. Appellant made a prior motion with the district court seeking leave to file a "master motion" transferring all of its 15,000 claims to the Multidistrict Litigation Panel without the necessity of filing individual claims. The district court denied appellant's initial motion by an Opinion and Order dated July 9, 1998, and on April 19, 1999, the district court denied appellant's motion to reconsider this decision. We now affirm the district court's decision denying appellant's motion for reconsideration.
 AFFIRMED.[Copyrighted Material Omitted]
 Alan Kellman, The Maritime Asbestosis Legal Clinic, Detroit, MI, for Appellant.
 Morris Stern, Stern, Dubrow & Marcus, Maplewood, NJ, (Maurice Hryshko, on the brief) for Appellee.
 Before: CARDAMONE, LEVAL, and PARKER, Circuit Judges.
 PARKER, Circuit Judge:
 
 
 1
 Appellant Maritime Asbestos Legal Clinic ("MALC") appeals the April 19, 1999, Opinion and Order of the United States District Court for the Southern District of New York (Michael B. Mukasey, Judge), which denied MALC's motion for reconsideration of the court's July 9, 1998, Opinion and Order. The July 9, 1998, Opinion and Order affirmed the June 30, 1997, Order of the Bankruptcy Court for the Southern District of New York (Arthur J. Gonzalez, Bankruptcy Judge), in which the bankruptcy court lifted the stay on the litigation of appellant's claims for personal injuries against debtor, United States Lines, Inc. and United States Lines (S.A.) Inc. (referred to collectively as "USL"), and ordered that appellant file a separate civil action for each of its claims against USL. We affirm.
 
 I. BACKGROUND
 
 2
 Appellant MALC represents approximately 15,000 seamen who all maintain that they were exposed to asbestos while working aboard ships operated by USL. In 1986, USL filed a petition in the Southern District of New York under Chapter 11 of the Bankruptcy Code (the "Code"). MALC first began to file claims against USL in 1987, but MALC's litigation of these claims was automatically stayed pursuant to Section 362 of the Code.
 
 
 3
 In 1990, the bankruptcy court confirmed USL's reorganization plan, which created a Reorganization Trust (the "Trust") that succeeded to USL's rights and interests. Later in 1990, the bankruptcy court concluded that the stay of litigation for MALC's claims would remain in effect in order to provide the Trust with an opportunity to evaluate the claims and obtain pertinent supporting documentation of individual claims from MALC. The stay and the evaluation period were intended to provide the Trust with an opportunity to determine which claims could be settled outside of the formal litigation process.
 
 
 4
 Apparently, MALC and the Trust had difficulty pursuing settlement, largely because both parties were at odds regarding what information MALC was obligated to provide. Thus, in 1993, the bankruptcy court entered a consent order (the "Consent Order") detailing MALC's precise disclosure obligations. This order required that MALC disclose claimants' names and social security numbers, along with other basic facts about the claimants. Following MALC's disclosure of this information, the Consent Order provided that MALC and the Trust could move to lift the stay and pursue litigation, or they could proceed with settlement efforts. The parties also agreed that if the Trust elected to proceed with settlement, MALC would provide the amount of damages sought by each plaintiff, as well as a more detailed medical history for each claimant.
 
 
 5
 MALC apparently provided the information specified in the Consent Order, and the parties proceeded to engage in settlement discussions from 1993 to 1996. The parties made little progress in these discussions, however, and the Trust ultimately complained to the bankruptcy court that MALC had "stubbornly refuse[d]" to provide the supplemental settlement documentation as previously contemplated in the Consent Order. The Trust therefore requested that the bankruptcy court either expunge MALC's claims or lift the automatic stay order so that the claims could be litigated. In addition, the Trust requested that the court order MALC to file its claims in the Southern District of New York and to recommend that the claims then be transferred to the United States District Court for the Eastern District of Pennsylvania for pretrial management as part of the ongoing Asbestos Multidistrict Litigation ("MDL").
 
 
 6
 In June 1997, the bankruptcy court ruled that MALC's claims would not be expunged, but that the automatic stay would be lifted. See In re United States Lines, Inc., Nos. 86 B 12240, 86 B 12241 (Bankr. S.D.N.Y. June 30, 1997). During an earlier hearing relating to this ruling, the bankruptcy court had noted:
 
 
 7
 MALC's settlement strategy over the last four years included failing to produce any documentation other than [background information]. Thus it chose to go forward with settlement negotiations, but not in accordance with the terms of the June 1993 Order. But that strategy was risky, and has proved unwise.
 
 
 8
 MALC's cry that it needs the continued restraint on litigation rings hollow to the Court. The Court finds that MALC had the ability to demonstrate its desire to resolve the claims through the settlement process provided in the June 1993 Order, but it chose to pursue a path that was apparently premised on the theory that the sheer volume of claims would force a settlement without the necessity of producing the additional documentation as provided for in the June 1993 Order.
 
 
 9
 The stalemate that has plagued this case must be ended. There is no longer any cognizable justification for the restraint on litigation.
 
 
 10
 In re: United States Lines, Inc., No. 97 CIV. 6727(MBM), 1998 WL 382023, at *2 (S.D.N.Y. July 9, 1998) ("United States Lines I"). The bankruptcy court, apparently relying on 28 U.S.C. § 157(b)(5), thus ordered that each of MALC's claims "become the subject of a properly filed Civil Action Complaint . . . filed in the District Court for the Southern District of New York." In re United States Lines, Inc., Nos. 86 B 12240, 86 B 12241, at 5 (Bankr. S.D.N.Y. June 30, 1997). The bankruptcy court further: (1) revised the bar date for previously discovered asbestos claims; and (2) "commend[ed]" to the Southern District courts that any claim related to the MALC litigation should be transferred to MDL for pretrial management. Id.
 
 
 11
 MALC subsequently appealed the bankruptcy court's decision to the district court. On that appeal, both parties agreed that the bankruptcy court's June 1997 Order was final and that appellate jurisdiction in the district court was therefore proper under 28 U.S.C. § 158(a)(1). The district court agreed with the parties and thus took jurisdiction over their appeal. See United States Lines I, 1998 WL 382023, at *2 (citing Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.), 907 F.2d 1280, 1283 (2d Cir. 1990) (order lifting stay is final)). The district court construed MALC's appeal as containing three arguments: (1) the bankruptcy court's decision to lift the stay "unfairly deprived [it] of the right to have its claims resolved in bankruptcy," id.; (2) even if lifting the stay were proper, the court's order requiring MALC to pursue each of its claims in the Southern District was improper; and (3) the bankruptcy court's recommendation for a procedure whereby MALC's claims would be indirectly transferred to the MDL was improper. Id. The district court also noted that "[o]ne further matter remained to be considered," id. at *7, which was MALC's request to file a "'master motion'[1] in the Asbestos MDL, requesting that the Trust be added as a defendant in the existing cases pending there." Id.
 
 
 12
 After considering MALC's arguments, the district court ruled on July 9, 1998, that: (1) "appellants lost whatever 'right' they may have had to resolve their claims in bankruptcy, and the Bankruptcy Court was well within its discretion in lifting the bar on litigation," id. at *3; (2) whether the bankruptcy court had the authority to order that each claim be pursued in the Southern District was irrelevant because the district court undeniably had the right to issue such an order, and the court in this instance would effect the same order; (3) each step that the bankruptcy court recommended as part of the transfer of claims to MDL was proper; and (4) MALC's request for a master motion was untimely and would not be considered under the circumstances. See id. at *3-7.
 
 
 13
 On July 29, 1998, MALC filed a notice of appeal with this Court. On September 2, 1998, MALC moved voluntarily to withdraw the appeal in order to pursue a remedy in the district court. On September 9, 1998, MALC filed a motion in the district court, which did not invoke a specific Federal Rule of Civil Procedure, but that nonetheless: (1) requested the district court grant it leave to file a master motion before Judge Charles R. Weiner of the United States District Court for the Eastern District of Pennsylvania, who presides over the asbestos MDL; (2) requested that the Trust be added to the MDL as a party-defendant in preexisiting cases in the MDL; and (3) sought an order granting those claimants who had not already filed actions in civil court leave to file such complaints in the United States District Court for the Northern District of Ohio[2] and relieving current claimants of the requirement that they file separate civil complaints in the Southern District. On October 7, 1998, this Court issued a mandate dismissing MALC's appeal.
 
 
 14
 On April 19, 1999, the district court denied MALC's motion. See In re: United States Lines, Inc., No. 97 CIV. 6727(MBM), 1999 WL 225533, at *2 (S.D.N.Y. Apr. 19, 1999) ("United States Lines II"). The district court first noted that MALC had failed to "cite any provision of the Federal Rules of Civil Procedure as a basis for [its] motion." Id. at *3. The district court then reasoned that because MALC sought relief from the court's prior July 9, 1998, Order, such motion must fall under Rule 59 or Rule 60, which govern the circumstances whereby a party can obtain relief from a district court's final order. Because MALC's motion was filed more than ten days after the entry of the previous order, the district court construed the motion as one governed by Rule 60. See id. (citing Association for Retarded Citizens of Conn., Inc. v. Thorne, 68 F.3d 547, 553 (2d Cir. 1995) ("Motions served within 10 days of judgment ordinarily fall under Rule 59(e), while motions served later fall under Rule 60(b).")).
 
 
 15
 After determining that the motion was made pursuant to Rule 60, the district court concluded that the Rule "does not provide any basis for relief from the July 1998 Opinion and Order." Id. at *4. The district court reasoned that MALC's failure to raise the "master motion" issue in a timely fashion, i.e., in its original brief (instead of as a footnote in its reply brief) or within ten days from the court's initial Opinion and Order, did not constitute the sort of circumstances that would allow the district court to act under Rule 60. The district court also stated that, although MALC contended that 11 U.S.C. § 105(a) provided the court with authority to grant relief from its prior order, MALC had cited no authority, and the district court had found none, to support this proposition. See id. at *5. Thus, the district court concluded "appellants are procedurally barred from raising the present motion." Id. MALC filed a timely notice of appeal from this decision on May 18, 1999.
 
 II. DISCUSSION
 
 16
 MALC's principal argument on appeal is that the district court erred in construing its September 9, 1998, Motion for Leave to File Master Motion as a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure. MALC contends that the district court's July 9, 1998, Opinion and Order was not a "final" decision as required by Rule 60. Thus, MALC argues that its September 9, 1998, Motion, which sought relief from a portion of the district court's July 9, 1998, Opinion and Order, was not procedurally barred and that the district court erred in refusing to address the merits of its motion.
 
 
 17
 In order to address MALC's arguments on appeal, we must first determine whether the district court's July 9, 1998, Opinion and Order was, in fact, a "final" order within the meaning of Rule 60. If the Opinion and Order was not a "final" order, we then must determine whether MALC's motion was properly before the district court and whether the court had the power to grant any relief. While we ultimately agree with MALC that the district court's July 9, 1998, Opinion and Order was not "final" with respect to venue, and thus that the district court erred in construing MALC's motion as a Rule 60 Motion, we nonetheless conclude that the district court properly denied MALC's motion because it lacked the power to grant the requested relief. Accordingly, we affirm the decision of the district court, albeit on different grounds, for the reasons set forth below. See Richardson v. Selsky, 5 F.3d 616, 621 (2d Cir. 1993) ("we may affirm on any basis supported by the record, including grounds on which the district court did not rely").
 
 
 18
 A. The Finality of the District Court's July 9, 1998, Order
 
 
 19
 In determining whether the district court's July 9, 1998, Order was "final" for the purposes of Rule 60, we are guided by 28 U.S.C. § 158(a), which governs appeals to district courts from the bankruptcy courts.[3] See Bank Brussels Lambert v. Coan (In re Arochem), 176 F.3d 610, 618 (2d Cir. 1999) (discussing appellate jurisdiction in bankruptcy matters). As we have previously noted, in the bankruptcy context "the concept of 'finality' is more flexible . . . than in ordinary civil litigation." Id. at 619 (quoting United States Trustee v. Bloom (In re Palm Coast, Matanza Shores Ltd. Partnership), 101 F.3d 253, 256 (2d Cir. 1996)). To determine whether a district court's appellate decision in a bankruptcy case is final, this Court in Bowers v. Connecticut National Bank, 847 F.2d 1019, 1022 (2d Cir. 1988), established a two-step inquiry: (1) "we must determine whether the underlying decision of the bankruptcy court was final or interlocutory"; and (2) "we must then ask whether the district court's disposition independently rendered the matter nonappealable." Bowers, 847 F.2d at 1022; see also In re Arochem, 176 F.3d at 620 (quoting In re Palm Coast, 101 F.3d at 256).
 
 
 20
 In applying the Bowers test, we first examine the June 30, 1997, Order of the Bankruptcy Court to determine whether that decision was "final" or "interlocutory." Paragraph 9 of this Order provides:
 
 
 21
 Each MALC Asbestos Claim relieved of any persisting injunction against litigation, pursuant to the terms of paragraphs 6, 7, or 8 above, must become the subject of a properly filed Civil Action Complaint against the Trust, that is, filed in the District Court for the Southern District of New York, at the earlier of (a) 90 days following the effective date of relief from said injunction or (b) the day preceding the date when any applicable statute of limitations runs (after taking account of 11 U.S.C. § 108(c)(2)).
 
 
 22
 In re United States Lines, Inc., Nos. 86 B 12240, 86 B 12241, at 5 (Bankr. S.D.N.Y. June 30, 1997). It is apparent from this language that the bankruptcy court intended to establish venue for the MALC claims in the District Court for the Southern District of New York. In appealing to the district court, both parties conceded that this ruling was "final" for purposes of appeal to the district court, but MALC objected to the order on the ground that the bankruptcy court lacked the authority to set venue. See United States Lines I, 1998 WL 382023, at *2-4.
 
 
 23
 In addressing MALC's objection to the bankruptcy court's venue determination, the district court noted that the plain language of 28 U.S.C. § 157(d)(5) states that the power to determine venue is "vested only in 'the district court in which the bankruptcy case is pending.' " United States Lines I, 1998 WL 382023, at *4. The district court then noted that it was unnecessary to address whether a bankruptcy court has the power to determine venue, because "even if the Bankruptcy Court did not have the power to fix venue under § 157(b)(5), this court assuredly does." Id. The district court then analyzed the parties' arguments regarding venue and concluded:
 
 
 24
 Accordingly, because fixing venue for appellants' actions in this District is conducive, if not necessary, to the organized resolution of this bankruptcy case, to the extent the Bankruptcy Court lacked authority to do so under § 157(b)(5), appellants are hereby ordered to file their asbestos actions in this District.
 
 
 25
 Id. at *5.
 
 
 26
 We agree with the district court insofar as it determined that the bankruptcy court lacked the power to set venue under Section 157(b)(5). There is nothing in the language of Section 157(b)(5) to suggest that a bankruptcy court can determine venue, and we have previously stated that a "transfer motion [under Section 157(b)(5)] should be made to the district court in the district where the bankruptcy is proceeding." Murray v. Pan Am. World Airways, Inc. (In re Pan Am Corp.), 16 F.3d 513, 516 (2d Cir. 1994).
 
 
 27
 Thus, the district court was not exercising its power as an appellate court under Section 158(a)(1) in setting venue in the Southern District. Rather, because there was not a valid order of the bankruptcy court to review, the district court's venue order was necessarily an order pursuant to the district court's original jurisdiction under Section 157(b)(5). Since the venue order was issued by the district court, it cannot be "final" under Bowers because it fails to satisfy the first requirement of the test. Of course, even if the district court's order setting venue was issued pursuant to its original jurisdiction, such an order could still be "final" for the purposes of Rule 60. We therefore must also examine the nature of the district court's order.
 
 
 28
 Under 28 U.S.C. § 157(b)(5), a district court is empowered to set venue either "in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose." In this case, the district court either could have set venue in the Southern District of New York, or it could have set venue for each claim in the various districts in which the claims arose. In deciding to set venue in the Southern District, the district court noted that the purpose behind Section 157(b)(5) was to give district courts the power to centralize claims and that this goal would be frustrated by sending "15,000 civil actions [to] state and federal courts around the country." United States Lines I, 1998 WL 382023, at *5.
 
 
 29
 There is nothing about the district court's decision regarding venue, however, that would support a conclusion that it was a final order. In fact, the district court seemed to leave open the possibility that MALC might file a "master motion" concerning venue in the future. See id., at *7 (noting that MALC had not made the "master motion" alluded to in its reply brief and declining to address the issue further until it did). Furthermore, at least one court has specifically held that venue orders are not final, see United States Trustee v. Sorrells (In re Sorrells), 218 B.R. 580, 582 (B.A.P. 10th Cir. 1998) (stating that venue orders are not final orders) (citing Dalton v. United States (In re Dalton), 733 F.2d 710, 714 (10th Cir. 1984)), and our prior case law suggests that this Court also views venue determinations as nonfinal orders. See In re Pan Am, 16 F.3d at 515 (holding that appellate court has jurisdiction to review district court's venue determination only if such determination is "final" under 28 U.S.C. § 1291 or it satisfies the collateral order doctrine, but exercising jurisdiction only under collateral order doctrine). Thus, because the district court retained the power to change venue, its July 9, 1998, Order and Opinion was not "final" in this regard. Consequently, the district court erred in treating MALC's motion as one pursuant to Rule 60.
 
 
 30
 B. The District Court's Denial of MALC's Motion
 
 
 31
 In spite of this error, the district court correctly denied MALC's Motion for Leave to File a Master Motion. MALC's Motion essentially seeks a transfer of venue from the Southern District to the MDL panel in the Eastern District of Pennsylvania or the Northern District of Ohio. The district court's authority to effect such a venue change potentially exists only under three statutes: 28 U.S.C. § 157(b)(5), which governs venue of personal tort actions in bankruptcy cases; 28 U.S.C. § 1404,[4] the general change of venue provision; or 28 U.S.C. § 1407,[5] which governs transfer of cases to MDL. A close examination of each of these statutes, however, reveals that none of them affords MALC the remedy it seeks, and the district court therefore correctly denied its motion.
 
 
 32
 As stated above, 28 U.S.C. § 157(b)(5) grants a district court the power to set venue in either: (1) the district in which the bankruptcy is pending; or (2) the district in which the claims arose. Since the bankruptcy proceeding is pending in the Southern District, the only other possible venues are the various districts where the individual claims of the MALC claimants arose. While some of these claims might very well have arisen in the Eastern District of Pennsylvania or the Northern District of Ohio, MALC did not seek the transfer of only these claims. Rather, MALC sought the transfer of all of its pending claims. To the extent that MALC's claimants include individuals whose claims did not arise in the Eastern District of Pennsylvania or the Northern District of Ohio, the district court lacked the power to transfer these claims under 28 U.S.C. § 157(b)(5). As a result, Section 157(b)(5) does not provide authority for the district court to grant MALC's requested relief by transferring all of its claims to the Eastern District of Pennsylvania or the Northern District of Ohio.
 
 
 33
 Similarly, MALC's Motion is also not cognizable under 28 U.S.C. § 1404 or 28 U.S.C. § 1407. Sections 1404 and 1407 both refer to transfers involving "any civil action." In this case, however, MALC currently has no civil actions pending, and as MALC has previously recognized, its "claims" cannot be equated with "actions." United States Lines I, 1998 WL 382023, at *3 (quoting MALC's reply memorandum, which argues that the bankruptcy court did not have the power to "mandate that asbestos claims in bankruptcy be transformed into actions" at law). Furthermore, the Code's repeated distinction between "claims" and "civil actions" leads us to conclude that MALC's claims in this case cannot be considered "civil actions" for the purposes of the venue statutes. See, e.g., 11 U.S.C. § 108(c) (differentiating between "civil action" and "claim"). Consequently, the district court lacked the power to transfer MALC's claims to the Eastern District of Pennsylvania or the Northern District of Ohio under 28 U.S.C. §§ 1404 and 1407.
 
 
 34
 Therefore, we conclude that once the district court determined venue, MALC's only available options were to: (1) seek reconsideration of that decision under the local rules; (2) appeal the decision under the collateral order doctrine; or (3) seek a change of venue to the district court where the claims arose pursuant to Section 157(b)(5). Under the applicable local rule in the Southern District of New York, Local Civil Rule 6.3, MALC was required to serve any motion for reconsideration within ten days after the docketing of the district court's July 9, 1998, Order and Opinion. Thus, MALC's failure to file a motion for reconsideration, or to pursue an appeal under the collateral order doctrine, relegated it to pursuing a change in venue pursuant to Section 157(b)(5).
 
 
 35
 The district court therefore should have construed MALC's Motion to File a Master Motion as seeking a change of venue under Section 157(b)(5), the only source of authority for effecting a change of venue in this case. Because Section 157(b)(5) does not provide the relief MALC seeks, the district court correctly denied MALC's motion. We therefore affirm the decision of the district court, but MALC remains free to file a Motion to Transfer under Section 157(b)(5) to the districts where each claim arose, or to file a motion to transfer under 28 U.S.C. §§ 1404 or 1407 once it files civil actions in the Southern District of New York.
 
 III. CONCLUSION
 
 36
 For the reasons stated above, the decision of the district court is AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 Our search of decisions from the federal courts of appeals and district courts uncovered no cases that discuss a "master motion." As we understand MALC's use of this term, a "master motion" is a consolidated motion, made on behalf of thousands of claimants who have not formally been joined in any action, which seeks an en masse transfer of all of those claims that were previously made in bankruptcy to the Asbestos MDL.
 
 
 [2]
 MALC requested this particular district because it allows complaints to be filed electronically via the Internet.
 
 
 [3]
 28 U.S.C. § 158(a) provides, in relevant part, that "[t]he district courts of the United States shall have jurisdiction to hear appeals (1) from final judgments, orders, and decrees; . . . of bankruptcy judges." In turn, 28 U.S.C. § 158(d) provides, "[t]he courts of appeals shall have jurisdiction of appeals from all final decisions, judgments, orders, and decrees entered under subsections (a) and (b) of this section."
 
 
 [4]
 28 U.S.C. § 1404 provides, in relevant part:
 (a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.
 28 U.S.C. § 1404(a).
 
 
 [5]
 28 U.S.C. § 1407 provides, in relevant part:
 (a) When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated and consolidated pretrial proceedings.
 28 U.S.C. § 1407(a).