**In re U.S. LINES, INC., Asbestosis Claimants, Appellant,**

v.

**U.S. LINES REORGANIZATION TRUST, U.S. Lines, Inc., Appellee.**

**No. 00 Civ. 3800 RWS.**

United States District Court, S.D. New York.

May 17, 2001.

Maritime Asbestosis Legal Clinic, Division of Jaques Admiralty Law Firm, Detroit, MI, By: Alan Kellman, for Appellant, of counsel.

Stern, Dubow & Marcus, Maplewood, NJ, By: Morris Stern, for Appellee, of counsel.

## OPINION

SWEET, District Judge.

The appellant Maritime Asbestosis Legal Clinic ("MALC") has appealed an order of March 8, 2000 of the Bankruptcy Court entered by the Honorable Arthur J. Gonzalez (the "March 2000 Order") which expunged 23,963 claims of seamen exposed to asbestos filed by MALC in the bankruptcy proceeding of appellees United States Lines Inc. ("Lines") and United

States Lines (S.A.) Inc. Reorganization Trust (the "Trust"). For the reasons set forth below, the March 2000 Order is affirmed.

The issues presented by this appeal include the complications presented by the Supreme Court's decision in *Marathon*,[1] the difficulties in administering mass tort litigation and a tortured procedural history. To resolve this appeal it is necessary to reach conclusions with respect to: 1) the propriety of the bankruptcy claim dismissals lifting the bankruptcy stay and requiring claim definition and the filing of district court actions; 2) the applicability of equitable tolling as affected by venue; and 3) filing and pleading requirements including the propriety of a master complaint. Simplification is imperative but almost unachievable.

### The Parties

In early 1986, MALC commenced filing maritime asbestos-related causes of action against shipowners, alleging violations of the Jones Act (46 App.U.S.C. § 688 et seq.) and the duty of seaworthiness under general maritime law arising out of exposure to asbestos. These cases were largely filed electronically in the United States District Court, Northern District of Ohio, where a maritime docket ("MARDOC") was established. MALC filed 288 such cases against Lines by November 24, 1986, and there are presently at issue in the neighborhood of 15,000 claims prepared by MALC on behalf of seamen.

Lines began operating in 1893. During the relevant period of exposure to asbestos, Lines employed a significant number of seamen on its cargo vessels, tugs, barges and scows, operating in the neighborhood of 687 vessels. There is some scientific evidence that roughly thirty percent of merchant marine seamen were affected by physical changes resulting from asbestosis. Lines filed for relief under the Bankruptcy Code on November 24, 1986, and the Trust was set up to process asbestos claims and to preserve and pursue insurance rights.

### The History of the Proceedings

After the filing of the petition for reorganization in 1986, a number of things were done to facilitate the processing of outstanding asbestos claims. The Trust was established, a bar date for filing claims was established, the automatic stay was modified nullifying claims also filed in the Northern District of Ohio, and proceedings were held to establish the documentation which would be required to lift the stay.

The Debtors' Plan of Reorganization (the "Plan") became effective on February 23, 1990.

In 1991, MALC and the Trust sought to settle a sampling of 70 claims, but disagreed about the documentation needed from MALC to comply with the Bankruptcy Court's orders of April 18, 1990, October 17, 1990, and October 24, 1990 (the "Early Procedure Orders") and generally to substantiate each proof of claim. Finally, by consent order dated June 9, 1993 (the "June 1993 Order"), the level of documentation required to validate all MALC asbestos claims ("Initial Documentation")[2] and the documentation necessary for claim settlement to go forward ("Settlement Documentation") were defined. The June

---

**1.** *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598.

**2.** Such Initial Documentation includes the claimant's name, social security number, date of birth and date of death, the nature of the alleged illness/injury, date of first manifestation of asbestos-related illness, documentation of first manifestation if "late manifesting," claimant's sailing history, and claim litigation history, if any.

1993 Order provided that MALC submit Initial Documentation for all filed and to-be-filed asbestos claims or "the Trust may move to expunge claims where compliant and timely Initial Documentation has not been provided." The June 1993 Order left MALC–Trust settlement efforts to the discretion of the parties, permitting either party to move for relief from the pending injunction against litigation. The order further provided that any order granting relief from the pending injunction must refer to 28 U.S.C. § 157(b)(5) and include the recommendation that asbestos trial management be carried out under the auspices of the Multi–District Litigation ("MDL").[3]

Also in 1993, an adversary proceeding was started by the Trustee involving some seven insurers and protection and indemnity associations (the "P & I Clubs"). That litigation has been hard fought and is ongoing. *In re United States Lines* and *United States Lines (S.A.) Reorganization Trust v. American Steamship Owners Mutual Protection and Indemnity Association Inc., et al.,* Adversary Case No. 93–8004A (Bankr.S.D.N.Y.). In 1999, the Second Circuit upheld the bankruptcy court's decision that this was a "core" proceeding and thus should be resolved here rather than in arbitration abroad. 216 F.3d 228 (1999), *cert. denied,* 529 U.S. 1038, 120 S.Ct. 1532, 146 L.Ed.2d 347 (2000).

In 1994, a sampling of 368 MALC claims were the subject of another settlement effort which was again unsuccessful.

On May 2, 1996, Judge Weiner administratively dismissed without prejudice the vast majority of the MALC cases as unresponsive to discovery demands.

By motion of July 31, 1996 (the "July 1996 Motion"), the Trust sought an order from the Bankruptcy Court for: (1) expungement of all filed and persisting MALC asbestos claims based on insufficient documentation, or, as a lesser preferred alternative, a lifting of the restraint on litigation against the Trust then affecting all such persisting and after-filed claims; (2) establishment of a second bar date for all asbestos and other late-manifesting bodily injury claims manifesting in the period between the petition date and the date of the applied-for order; (3) provision for the documentation and settlement of MALC asbestos claims filed after the date of the applied-for order, including expungement or lifting of the restraint on litigation where necessary; (4) promulgation of a timetable for the filing and maintenance of a civil action complaint by each MALC asbestos claimant relieved of the restraint on litigation; and (5) a requirement that any litigation of asbestos claims shall be filed in the District Court for the Southern District of New York consistent with 28 U.S.C. § 157(b)(5) and that the Bankruptcy Court commend referral of trial management by the District Court to the MDL Court.

As of the filing of the July 1996 Motion, Initial Documentation had generally been provided by MALC. There were exceptions, however, and expungement for failure to file the rudimentary Initial Documentation was sought as to many claims.

Following initial argument on September 18, 1996, there were conferences before the Bankruptcy Court on December 5, 1996, March 21, 1997 and May 20, 1997, during which asbestos claim resolution processes were addressed. Finally, after

---

**3.** In 1991, the Multi–District Court Panel issued its decision setting up the asbestos MDL Court. *In re Asbestos Products Liability Litigation (No. VI),* 771 F.Supp. 415 (Mult.Dist.Jud.Panel 1991). All federal court asbestos-related actions were transferred to the Honorable Charles R. Weiner of the Eastern District of Pennsylvania.

acknowledging on May 20, 1997 the "significant period of time to try to work things out" since the Plan called for confirmation on a comprehensive and consensual basis, the Bankruptcy Court announced that the Trust's July 31, 1996 Motion would be decided on June 5, 1997.

On June 5, 1997, the Bankruptcy Court found "that although there is a great deal of support for [expungement of all of MALC's claims], a less drastic remedy appears more appropriate under the circumstances and in light of the various documentation Orders that have been entered previously by the Court." The alternate remedy was embodied in an Order ("Order B") which included terminating the injunction against litigation of asbestos claims which had persisted for more than seven years, providing for certain diligent prosecution requirements with respect to any such ensuing litigation, and commending referral to the MDL Court. The Bankruptcy Court explained its finding that the restraint on litigation would no longer serve bankruptcy administration purposes as follows:

The stalemate that has plagued this case must be ended. There is no longer any cognizable justification for the restraint on litigation. Further, based upon the actions of MALC throughout the history of this case regarding settlement documentation, the Trustee has persuaded the Court that MALC's failure to comply with the relief requested will be grounds for a motion of the Trustee to expunge the claims. Therefore, the lifting of the restraint, coupled with the other relief requested by the Trustee in Order B, is granted.

MALC objected, and for the first time raised objection to the requirements that it file "Complaints" rather than "Claims" in the District Court once the injunction against litigation is terminated, and stated that it could file "some 15,000 civil action complaints" in "up to six (6) weeks" from the date of the entry of an order.

The Bankruptcy Court signed a somewhat modified form of Order B on June 30, 1997 (the "June 1997 Order"), stating:

MALC's settlement strategy over the last four years leading up to the Decision included failing to produce any documentation other than the initial documentation. Thus it chose to go forward with settlement negotiations, but not in accordance with the terms of the June 1993 Order. But that strategy was risky, and has proved unwise. MALC's cry that it needs the continued restraint on litigation rings hollow to the Court. The Court finds that MALC had the ability to demonstrate its desire to resolve the claims through the settlement process provided in the June 1993 Order, but it chose to pursue a path that was apparently premised on the theory that the sheer volume of its claims would force a settlement without the necessity of producing the additional documentation as provided for in the June 1993 Order.

The June 1997 Order terminated the injunction against litigation of previously filed MALC asbestos claims and imposed a documentation schedule for claims filed after the date of that Order. Moreover, MALC was required to file, within specified time periods, a civil action complaint in the District Court for the Southern District of New York for each asbestos claim relieved of any injunction against litigation.

The Bankruptcy Court retained jurisdiction by lifting the stay "solely to the point of entry of judgment, if any," and determined that "[j]udgment shall not be enforceable nor shall any collection efforts be undertaken against the Trust without further order of this Court."

MALC appealed the June 1997 Order to the District Court for the Southern District of New York and shortly thereafter sought a stay of the order from the Bankruptcy Court. At a hearing on August 8, 1997, the Bankruptcy Court denied MALC's request for a stay pending appeal. MALC did not seek a stay from the District Court. In 1997, a joint effort to settle claims against Lines and similar claims against Prudential Lines, Inc. was undertaken unsuccessfully.

On July 9, 1998, the Honorable Michael B. Mukasey entered an opinion and order (the "July 1998 Affirmance") which, *inter alia*, (i) affirmed the lifting of the Bankruptcy Court stay against MALC claimants' right to liquidate their claims through litigation, and (ii) ordered MALC to file any resulting actions in the District Court for the Southern District of New York (then being subject to immediate transfer to the MDL Court).

MALC continued to file asbestos claims against the Trust, bringing its total filings up to May 1, 1999 to 23,991 on behalf of 14,720 "Unique Claimants". Of these claims, 1,776 were filed before the applicable bar date of November 25, 1987 ("Bar Date I") and 22,215 claims were filed after Bar Date I, which MALC has alleged are late-manifesting.

On July 30, 1998, MALC filed a notice of appeal of the July 1998 Affirmance without seeking a stay. On September 4, 1998, MALC moved to withdraw its appeal and to file a motion in the District Court for "Leave to File a Master Motion in the MDL [Court]" seeking to add the Trust as a party defendant to MALC's already filed MDL actions. On April 19, 1999, Judge Mukasey issued an opinion and order denying MALC's motion (the "April 1999 Order"). The District Court considered the strategy adopted by MALC and stated:

If anything, the circumstances of this case justify strict adherence to principle that final judgments are final. As the Bankruptcy Court documented in providing the basis for its June 1997 Order, MALC deliberately pursued a strategy of delay at earlier stages of this case, "apparently premised on the theory that the sheer volume of claims would force a settlement without the necessity of producing the additional documentation [as ordered by the court]."

The April 1999 Order was appealed.

On May 18, 1999, during the pendency of the appeal of the April 1999 Order, the Trust moved to expunge the MALC claims. MALC sought to strike, adjourn or stay the motion, and then by application for an order to show cause, to extend the time for filing of civil actions under the June 1997 Order. Both efforts were denied. On June 22, 1999, the expungement motion and MALC's application to extend the time bars of the affirmed June 1997 Order, were heard by the Bankruptcy Court in extended argument.

MALC then belatedly filed certain Initial Documentation and some 2,935 civil action complaints, and a motion to reopen the expungement motion's record. After a hearing on October 6, 1999, the Bankruptcy Court denied MALC's motion to reopen the record.

The Trust objected to the District Court clerk that the MALC civil actions were improperly filed in violation of the filing fee requirements of 28 U.S.C. § 1914. By order of November 18, 1999, this Court determined that MALC was required to pay the 28 U.S.C. § 1914 filing fees, but withdrew the order since the cases had already been transferred to the MDL Court by the clerk. As authority that MALC had not met the filing fee requirements, the Court cited the two orders

MALC was already subject to, *i.e.*, those of MDL Judge Weiner of May 2, 1996 and Chief District Court Judge White (N.D.Ohio) of May 13, 1996.

The Bankruptcy Court rendered its decision on the expungement motion by its March 2000 Order, the Order from which the instant appeal was taken. The March 2000 Order set forth what the Appellees have characterized as the volume strategy of MALC, the stalemate which had existed, the process by which the June 1997 Order was settled, the August 1997 denial of MALC's motion to stay that Order, and the "various attempts ... by MALC ... to modify the June 1997 Order." The Bankruptcy Court made twelve findings in support of its fourteen decretal paragraphs and the Order included four exhibits. In fact, MALC has reserved for this appeal "only those [claims] expunged because some 14,000 individual civil actions could not be filed within the 30–day time frame ordered by the bankruptcy court." The March 2000 Order and its Time–Line exhibit, prepared by the Trustee, are annexed as Appendices A and B.

On June 16, 2000, the Court of Appeals affirmed the April 1999 Order, though on grounds differing from that of the District Court. *In re United States Lines*, 216 F.3d 228 (2d Cir.2000). In that opinion, the Court stated:

> After considering MALC's arguments, the district court ruled on July 9, 1998, that: (1) "appellants lost whatever 'right' they may have had to resolve their claims in bankruptcy, and the Bankruptcy Court was well within its discretion in lifting the bar on litigation," ...; (2) whether the bankruptcy court had the authority to order that each claim be pursued in the Southern District was irrelevant because the court undeniably had the right to issue such an order, and the court in this instance would effect the same order; (3) each step that the bankruptcy court recommended as part of the transfer of claims to MDL was proper; and (4) MALC's request for a master motion was untimely and would not be considered under the circumstances.

> \* \* \*

> We therefore affirm the decision of the district court, but MALC remains free to file a Motion to Transfer under Section 157(b)(5) to the districts where each claim arose, or to file a motion to transfer under 28 U.S.C. §§ 1404 or 1407 once it filed civil actions in the Southern District of New York.

*In re United States Lines, Inc.*, 216 F.3d 228, 232 (2d Cir.2000) (citations omitted).

The appeal from the March 2000 Order of the Bankruptcy Court was filed on May 19, 2000, and the appeal was referred to the Honorable Michael B. Mukasey, Chief Judge, then reassigned to the Honorable Victor Marrero, and then to this Court. Briefs were filed, and the appeal was heard and marked fully submitted on January 17, 2001.

### Standard of Review

■ Rule 8013 of the Rules of Bankruptcy Procedure provides that a "district court ... may affirm, modify or reverse a bankruptcy court's judgment, or order or decree and remand with instructions for further proceedings. Findings of fact ... shall not be set aside unless clearly erroneous...." Conclusions of law are reviewed *de novo*. *In re Montgomery*, 37 F.3d 413 (8th Cir.1994); *see In re Maxwell Newspapers, Inc.*, 981 F.2d 85, 89 (2d Cir.1992).

■ With respect to equitable tolling, the standard of review is *de novo*. *South v. Saab Cars USA, Inc.*, 28 F.3d 9 (2d Cir.1994). In this case, applying this standard is appropriate as the Bankruptcy

Court declined to consider the equitable tolling argument:

> As far as the equitable tolling issue that's raised, it seems to me that would have to be raised in response to a motion to dismiss by any action brought in District Court. I don't see why I would be involved at all in any kind of deliberation as to whether or not once I lifted the stay, and the 109 statute runs, as an issue that there should be some legal justification to equitably toll the running of the statute.

(R. Vol. X, Item 57, p. 9).

■ To the extent that MALC appeals the denial of its application for modification of the June 1997 Order's time frames,[4] the standard for review is abuse of discretion. *See Browder v. Director of Corrections of Ill.*, 434 U.S. 257, 263 n. 7, 98 S.Ct. 556, 54 L.Ed.2d 521 (1978); *Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne*, 605 F.2d 648, 656 (2d Cir.1979); 12 Moore's Fed. Practice 3d § 60.68[4]. *See also Nemaizer v. Baker*, 793 F.2d 58, 61–62 (2d Cir.1986).

### The March 2000 Order is Affirmed

The March 2000 Order, the subject of this appeal, enforced the provisions of the June 1997 Order and denied the modifications and extensions of the order sought by MALC. No factual findings have been established to be clearly erroneous nor has MALC established that the legal conclusions are in error. Modification on the grounds of equitable estoppel is not warranted for the reasons set forth below and the March 2000 Order is affirmed.

The June 1997 Order required MALC to file its asbestos complaints within specified time limits. The Order was entered after four conferences or arguments following the July 31, 1996 motion by the Trust. On June 5, 1997, the Bankruptcy Judge announced the decision and MALC noted the impact of 11 U.S.C. § 108(c) which provides for a thirty day complaint filing deadline for causes of action whose limitation period expired during the pendency of the bankruptcy stay against litigation. While the form of the June 30, 1997 Order was being settled, MALC advised the Court on June 12, 1997 of its administrative needs:

> [M]ore importantly, to file some 15,000 civil action complaints, will take up to six (6) weeks from the date of entry of an order establishing the necessity and time frame for filing civil action complaint.

The Bankruptcy Court then delayed execution of the June 1997 Order some two weeks until June 30, 1997, when it was finally signed, and allowed MALC the 11 U.S.C. § 108(c) period to file its pleadings.

■ Pursuant to paragraph 9 of that Order, MALC was to file its complaints by "the earlier of (a) 90 days following the effective date of relief from said injunction or (b) the day preceding the date when any applicable statute of limitations runs (after taking account of 11 U.S.C. § 108(c)(2))." Complaints based upon previously filed MALC claims for which the applicable limitations period[5] had not expired prior to the June 30, 1997 Order, were to be filed before the earlier of the expiration of such period or within 90 days following that

---

4. That application was a motion pursuant to Bankr.R. 9025 (incorporating Fed.R.Civ.P. 60(b)) to modify the June 1997 Order which had been previously affirmed by Judge Mukasey's July 1998 Affirmance.

5. Both the Jones Act limitations period (45 U.S.C. § 56, being the FELA period as incorporated by the Jones Act), and the uniform limitations period for maritime torts, 46 App. U.S.C. § 763a, provide a three year period within which to commence actions.

Order's effective date. Complaints based upon previously filed claims for which the applicable limitations period had expired during the pendency of the stay, were to be filed within the 30 day grace period following the lifting of the injunction against litigation, as allowed by 11 U.S.C. § 108(c)(2). Thus, all MALC's complaints for its previously filed claims were to have been filed no later than 90 days after the June 1997 Order.

MALC did not file any complaint from June 30, 1997 until after the June 22, 1999 hearing on the expungement motion, nearly two years later.

Two complaints pre-date the June 1997 Order. MALC filed 2,935 complaints, most on August 2, 1999, and some the week before. The Bankruptcy Court concluded that these civil actions were initiated after the expiration of the required filing periods of the June 1997 Order and therefore did not "limit the Court's authority to act upon MALC's failure to comply" with that Order.

The disallowance and expungement process for failure to meet the timely complaint filing dictates of the June 1997 Order became part of the administrative procedures in bankruptcy. Pursuant to 11 U.S.C. § 105(a), the Bankruptcy Court then found it "necessary or appropriate" to issue the March 2000 Order "to carry out the provisions" of Title 11, and to "enforce or implement" the June 1997 Order. The action taken by the Bankruptcy Court to enforce its administration procedures was appropriate, its findings were not clearly erroneous and no conclusions of law have been shown to be erroneous.

**The Bankruptcy Court Was Authorized to Dismiss Claims Based on Statute of Limitation Violations**

 In the context of the claim dismissals, the issue of claim "liquidation" has been raised by MALC. The Bankruptcy Court's limited jurisdiction does not include (unless by consent) the "liquidation" of personal injury claims. 28 U.S.C. § 157(b)(2)(B). Whether application of statute of limitations and like defenses by a Bankruptcy Court is such a liquidation, though unsettled nationally,[6] has been answered in the negative in this jurisdiction and is further discussed below. *In re Chateaugay Corp.*, 111 B.R. 67, 76 (Bankr. S.D.N.Y.1997).

---

**6.** *Compare In re C & G Excavating, Inc.*, 217 B.R. 64 (Bankr.E.D.Pa.1998) (disallowing personal injury claim because claimant failed to commence an action within the 30 days allotted by 11 U.S.C. § 108(c)), *aff'd Rhodes v. C & G Excavating, Inc.*, 1999 WL 820204 (E.D.Pa. Sept.29, 1999) ("The Bankruptcy Court may, however, decide procedural issues related to a personal injury claim that affect the administration of the bankruptcy estate."); *Standard Insulations*, 138 B.R. at 955 (Bankr.W.D.Mo.1992) ("As a matter of judicial economy the bankruptcy court must have authority to dispose of defective personal injury claims.") *with In re UNR Indus., Inc.*, 74 B.R. 146 (N.D.Ill.1987) (determining that the bankruptcy court could not decide a debtor's summary judgment motion seeking a determination that a personal injury claim, for which an action had been commenced pre-petition in state court, was barred by the federal government contractor defense because a decision in the debtor's favor would be a final adjudication on the merits); *In re Schepps Food Stores, Inc.*, 169 B.R. 374 (Bankr. S.D.Tex.1994) (holding that the bankruptcy court lacked jurisdiction to decide a debtor's summary judgment motion seeking a determination that a state limitations period had expired pre-petition on a personal injury claim, for which the claimant had commenced a state action pre-petition); *Pettibone Corp. v. Easley*, 935 F.2d 120 (7th Cir.1991) (holding that the bankruptcy court lacked jurisdiction to resolve state statutes of limitations defenses raised by a former debtor in its post-confirmation motion to enjoin the prosecution of three personal injury actions commenced during the bankruptcy stay).

Further, at issue here is the bar date context of the disallowance: the § 108(c)(2) reference (as well as the parallel 90–day deadline) is incorporated into a procedure order, not applied *ab initio* to a pending litigation outside of bankruptcy or as an initial litmus test for a claim under 11 U.S.C. § 502(b)(1).

■■■ Just as § 502(b)(9) bar date violations apply to personal injury claims, the violations of bar dates of the June 30, 1997 Order have been appropriately applied to MALC asbestos claims.[7]

The June 1997 Order was within the jurisdiction of the Bankruptcy Court, neither liquidated personal injury claims nor extended a statutory period of limitations without authority. In addition, the Bankruptcy Court was required to deal with unliquidated claims and to set deadlines for MALC to move its claims as cases once the stay was dissolved.

■■■ This district has recognized the authority of the Bankruptcy Court to apply statute of limitations and related dis-

positive legal defenses in the disallowance of claims, including personal injury claims. *In re Chateaugay Corp.*, 111 B.R. 67, 76 (Bankr.S.D.N.Y.1997) ("[T]he bankruptcy court must have jurisdiction to make the threshold determination of whether as a matter of law, a claim exists which can be asserted against the debtor, even if the claim sounds in personal injury, tort or wrongful death."). *See also In re Standard Insulations, Inc.*, 138 B.R. at 955 (Bankr.W.D.Mo.1992) ("As a matter of judicial economy the bankruptcy court must have authority to dispose of defective personal injury claims."); *In re Johns–Manville*, 824 F.2d 176 (2d Cir.1987); *In re C & G Excavating*, 217 B.R. 64, 64 (Bankr. E.D.Pa.1998) ("[B]ankruptcy courts have jurisdiction[8] to decide corollary issues involving the validity of a proof of claim for personal injuries or wrongful death such as whether the statute of limitations on the underlying cause of action has expired.") (*citing Chateaugay*, 111 B.R. at 75 and *Standard Insulations*, 138 B.R. at 951–54).[9] Consequently, a bankruptcy court

---

7. Disallowance of a personal injury claim based upon late filing of a proof of claim under 11 U.S.C. § 502(b)(9) is not prohibited "liquidation" of that claim per 28 U.S.C. § 157(b)(2)(B). *See, e.g., In re Waterman S.S. Corp.*, 59 B.R. 724 (Bankr.S.D.N.Y.1986) (disallowing a personal injury claim filed after the bar date when the claimant was unable to show excusable neglect); *In re Standard Insulations, Inc.*, 138 B.R. 947 (Bankr.W.D.Mo. 1992) (same); *In re Fairchild Aircraft Corp.*, 128 B.R. 976 (Bankr.W.D.Tex.1991) (same). So, too, disallowance of such a claim based upon the bar date of an authorized procedure order is not an unauthorized "liquidation."

8. Such jurisdiction includes the Bankruptcy Court's power to disallow claims that are untimely filed or filed in an improper form. *Id.*

9. As to disallowance of claims generally, 11 U.S.C. § 502(b)(1) provides that a proof of claim shall not be allowed "to the extent that [the] claim is unenforceable against the debt-

or and property of the debtor under any agreement or applicable law." Treatise support is as follows:

The effect of Section 502(b)(1) is to make available to the Trustee any defense which might be made to a claim by the debtor. To the extent that applicable law, including state law, would afford the debtor a defense to the claim of a creditor absent bankruptcy, such defense is available to the Trustee in objecting to the claim and seeking its disallowance. For example, if a claim would be unenforceable against a debtor or against the property of the debtor because, under applicable non-bankruptcy law, the debtor could raise a defense of usury, fraud, lack of consideration, conscionability, or the expiration of the statute of limitations, such defense affords the Trustee a basis for the disallowance of the claim in bankruptcy. In short, for the purposes of determining the allowability of a claim, the Trustee basically is given the benefit of any defense available to the debtor of a personal nature

may disallow a personal injury claim based on that court's determination that the claim, if litigated, would not be viable in light of the estate's available defenses.

### The Thirty Day Provision of 11 U.S.C. 108(c)(2) Could Not Have Been Extended by the Bankruptcy Court

▮▮ Further, the Bankruptcy Court was without authority to extend the 30–day grace period of § 108(c)(2). *See In re Danielson*, 981 F.2d 296, 298 (7th Cir.1992) (reading *Taylor v. Freeland & Kronz*, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992) as "hold[ing] that time limits in the Bankruptcy Code must be enforced. Courts have no standby power to excuse violations of statutes and rules."). *Compare and contrast* Bank. R. 9006(b)(1), which allows extension of certain rule and order deadlines, but not statutory deadlines. *See, e.g., In re Federated Food Courts, Inc.*, 222 B.R. 396 (Bankr.N.D.Ga. 1998).

▮▮ In *Aslanidis v. United States Lines, Inc.*, 7 F.3d 1067 (2d Cir.1993), the Second Circuit confirmed that the statutes of limitations run during the pendency of a bankruptcy. *Id.* at 1073 ("[Section] 108(c) does not provide for tolling of any externally imposed time bars, such as those found in the two maritime statutes of limitations."). Furthermore, if a limitations period expires while litigation is stayed, there is but the 30–day extension of 11 U.S.C. § 108(c)(2) in which to file a complaint. *Id.* ("[section 108(c)(1) ] only calls for applicable time deadlines to be extended for 30 days after notice of the termination of a bankruptcy stay, if any such deadline would have fallen on an earlier

date."). *See Rogers v. Corrosion Products, Inc.*, 42 F.3d 292, 297 (5th Cir.) ("Because a party may not file suit during the duration of the stay, the 30–day period becomes the only functional period in which to commence a suit."), *cert. denied*, 515 U.S. 1160, 115 S.Ct. 2614, 132 L.Ed.2d 857 (1995); *New Pentax Film, Inc. v. Trans World Airlines, Inc.*, 936 F.Supp. 142, 146 (S.D.N.Y.1996) ("[section 108(c) ] does not serve to toll the applicable non-bankruptcy law's statute of limitations ....") (*citing Aslanidis*).

*Aslanidis* was revisited by the Second Circuit in *Skywark v. United States Lines, Inc.*, 57 F.3d 1064 (2d Cir.), *cert. denied*, 516 U.S. 931, 116 S.Ct. 337, 133 L.Ed.2d 236 (1995). In *Skywark*, three months before U.S. Lines filed for Chapter 11 bankruptcy protection, the plaintiff was injured while working on a U.S. Lines ship. The plaintiff filed a proof of claim in the bankruptcy proceedings but was prevented from instituting a lawsuit until the bankruptcy stay was lifted on August 6, 1992. Plaintiff's attorney received notice of the lifting of the stay eleven days later on August 17, but did not commence an action until November 12, 1992. Relying upon *Aslanidis*, the district court dismissed the complaint as barred by the statute of limitations and the thirty-day extension provided by 11 U.S.C. § 108(c). *Skywark v. United States Lines, Inc.*, 1994 WL 494864 (S.D.N.Y. Sept.9, 1994). The district court granted relief on the plain language of the section, as follows:

> [T]he statutory language is perfectly clear and unambiguous. There is no basis whatever for departing from it or failing to enforce it.

which the debtor could have interposed, absent bankruptcy, and a suit on the claim by the creditor.

2 *Collier Bankruptcy Manual*, ¶ 502.03[2][b] (Lawrence P. King ed., 3d 1998). *See also* 11

U.S.C. § 558 ("The estate shall have the benefit of any defense available to the debtor as against any entity ... including statute of limitations....").

*Id.* at *2. The Court of Appeals affirmed.[10]

Against this background, on the expungement motion hearing date of June 22, 1999, MALC again sought to delay either implementation of the June 1997 Order's § 108(c)(2) deadline, or to extend the deadline fully cognizant of the implications of the June 1997 Order.

█ An appeal of the denial of relief from an affirmed order, the relief MALC requested of the Bankruptcy court with respect to the time requirements of the June 30, 1997 Order, is to be reviewed only for abuse of discretion. *See Browder v. Director of Corrections of Ill.*, 434 U.S. 257, 263 n. 7, 98 S.Ct. 556, 54 L.Ed.2d 521 (1978); *Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne*, 605 F.2d 648, 656 (2d Cir.1979); 12 *Moore's, supra,* § 60.68[4].

Given the history of the adoption of the June 30, 1997 Order, the consideration given by Judge Gonzalez to its modification or extension finally determined almost nine months after the Trust's motion to expunge was made, no grounds have been set forth to establish that the Bankruptcy Judge abused his discretion. Affirmance of the March 2000 Order is appropriate.

**The Grounds for Equitable Tolling Have Not Been Established**

█ As recognized by the March 2000 Order, the interest of putative claimants with valid claims for injuries or death resulting from asbestosis suffered as a result of exposure on U.S. Lines' vessels may well have been ill served by the procedures adopted by MALC to resolve such claims. MALC has sought to invoke equitable tolling to escape the strictures of the Order.

The Order recognizing the issue stated:

12. MALC has demonstrated over a protracted period, (i) its refusal to abandon a claim settlement strategy based upon its volume of claims, (ii) a stubborn refusal to document its claims for settlement purposes, and (iii) a stubborn refusal to meet the diligent complaint filing requirements of this Court's Order of 6/30/97.

The tragedy that befalls the victims, and their families, who are afflicted with diseases related to asbestos cannot be overstated. The possibility that some of the claimants whose claims are expunged under this order may have been able to provide documentation that would have warranted a recovery on their claim has been considered by the Court. However, this Court cannot ignore the fact that a system of law that allows itself to repeatedly excuse compliance by those who seek its benefit but refuse to heed its warnings is a system of law that compromises its integrity and thereby undermines its credibility. This Court must hold the claimants accountable for their failure to comply with its orders. Further, to the extent equity would warrant such consideration on a case by case basis, a claimant may be able to seek redress under § 502(j).

The Bankruptcy Court on June 5, 1997 had found that,

MALC had the ability to demonstrate its desire to resolve the claims through the settlement process that was apparently premised on the theory that the sheer volume of the claims would force a settlement without the necessity of producing the additional documentation as provided for in the June 1993 Order.

In response, MALC has noted the number of potential claimants, as set forth

---

**10.** *See also Bennett v. United States Lines,* 64 F.3d 62 (2d Cir.1995) (affirming the dismissal of a complaint filed 58 days after plaintiff had notice of the lifting of the bankruptcy stay).

above and the inability to resolve insurance coverage disputes which according to the Trust included,

hypertechnical insurance defenses—including defenses which linked each insurer to the others—constituting an insurance maze. That insurance maze has been exploited by all of the insurers to deny or drastically limit their responsibility, notwithstanding the criticality of the insurance coverage to the 1989 reorganization plan.

As has been noted, there is a pending adversary proceeding concerning insurance coverage for some seven insurance carriers and P & I Clubs on this issue.

The resistance of the insurers, and their effort to limit their liability on their perception that MALC had failed to provide adequate documentation, coupled with MALC's "volume strategy" produced the stalemate in the settlement effort which in turn resulted in the June 1997 Order and the March 2000 Order enforcing it. During this period MALC sought to achieve its goals through appeals though unprotected by any stays. In its effort to invoke equity, MALC has stated more than once, and correctly, that no orders were violated. On the other hand, MALC failed to comply with the June 1997 Order and file its claims in a timely manner.

By June 22, 1999, the date of the hearing on the Trustee's expungement motion which resulted in the March 8, 2000 Order, MALC was certainly aware of the possible consequences of its failure to comply with the June 1997 Order, resulting from a failure to file actions in the Southern District.

MALC filed 2,935 actions in this district without paying filing fees, and the cases were transferred to the Eastern District of Pennsylvania before the fee issue was definitively litigated as set forth in the opinion of this court on November 18, 1999.

By the decision of the Court of Appeals on June 16, 2000, the question of venue for any actions was resolved, *In re U.S. Lines, Inc.*, 216 F.3d 228 (2d Cir.2000).

By order of the MDL Judge Weiner, entered on August 17, 2000, the 2,935 cases were administratively dismissed without prejudice in accordance with his earlier May 1, 1996 opinion granting the same treatment to the MARDOC cases. Presumably upon responding in discovery and perhaps after an appropriate filing fee, those cases could be resolved in the MDL proceeding. Whether or not equitable tolling is an issue for those cases presumably will be resolved in the MDL Court where they now reside.

Similarly, it might well be that equitable tolling might be appropriate for any additional cases filed in this district. The tortured history of this litigation might give rise to such a consideration, but to date, leaving aside the 2,935 cases just discussed, the issue has not been presented to a district court.

As to any equitable tolling in the Bankruptcy Court relating to the putative 14,-000 cases, presumably now reduced to 11,-000, the March 2000 Order set forth its findings of fact and conclusions which are affirmed. While a different factual finding as to the failure of the "volume strategy" and the settlement efforts might be supportable as a *de novo* matter, the record does not establish that the findings are clearly erroneous, nor that the conclusions of the Bankruptcy Court are in error.

MALC has cited *Burnett v. New York Central R. Co.*, 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965), a case allowing tolling under limited circumstances. There, a timely state court filing (dismissed for lack of proper venue), served to toll the FELA limitations period as to a subsequently filed federal action. Howev-

er, *Burnett* (and its counterpart, *American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974)), have been distinguished in cases where plaintiffs are not diligent.

> [P]erhaps most importantly, the tolling effect given to the timely prior filings in *American Pipe* and *Burnett* depended heavily on the fact that those filings *involved exactly the same cause of action* subsequently asserted. This factor was more than a mere abstract or theoretical consideration because the prior filing in each case necessarily operated to avoid the evil against which the statute of limitations was designed to protect.

*Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 467, 95 S.Ct. 1716, 1723–24, 44 L.Ed.2d 295 (1975) (footnote omitted, emphasis added).[11]

The Bankruptcy Court has found that MALC failed to move its pending MDL cases, ignored the June 1997 Order's complaint filing requirements on behalf of the Asbestos Claimants "involv[ing] exactly the same cause[s] of action" which are now subject to time bars.

In the bankruptcy context, *Aslanidis v. U.S. Lines, Inc.,* 7 F.3d 1067 (2d Cir.1993) is controlling:

> [A] tolling rationale does not apply in the bankruptcy arena because plaintiffs have advance knowledge of when claims are to expire and may act to protect themselves.
>
> . . .
>
> Such was the case here. Aslanidis was not caught off-guard when the 30–day limitations period began to run; rather, by applying to the bankruptcy court for a waiver of the stay, he himself set that clock ticking. It is thus not correct for

him to declare that he was "prevented" from exercising his rights. The current scenario, though an unfortunate one for plaintiff, provides no basis for tolling the applicable time limits.

7 F.3d at 1074–75 (internal citations omitted).

MALC has also cited *In re Gurney,* 192 B.R. 529 (9th Cir. BAP 1996). A tax priority case, *Gurney* dealt with Arizona's effort to collect revenue in the face of four systematically filed bankruptcy petitions (three voluntarily dismissed). There the court stated:

> The equities in favor of tolling are compelling. In this case, Appellant systematically filed and voluntarily dismissed Case 1, Case 2, and Case 3. During this period, and continuing through the filing of Case 4, Appellant enjoyed the protection of the automatic stay for a total of six hundred eighty-two (682) days of the one thousand two hundred thirty-four (1,234) day period. It is undisputed that Appellant's prior bankruptcies and the pendency of the automatic stay worked as a barrier preventing Appellee's collection efforts. As observed by the Ninth Circuit Court of Appeals, federal courts should apply the doctrine of equitable tolling when "circumstances beyond the [creditor's] control make it impossible for [creditor] to [proceed]." *Seattle Audubon Soc'y v. Robertson,* 931 F.2d 590, 595 (9th Cir.1991), *rev'd on other grounds,* 503 U.S. 429, 112 S.Ct. 1407, 118 L.Ed.2d 73 (1992). Those circumstances exist here.

192 B.R. at 539.

Here, MALC knew of the § 108(c)(2) jeopardy and if Settlement Documentation was (and now for new claims is) submitted, the procedure orders of this bankruptcy

---

**11.** In *Johnson,* a timely filing of an employment discrimination charge with the EEOC did not toll the running of the limitations period under 42 U.S.C. § 1981.

would have been implemented. MALC had requested that the June 1997 Order include a pointed reference to § 108(C)(2)'s 30–day period and from July 31, 1996 forward, MALC knew that the stay could be lifted by the Court at essentially any point after the September 18, 1996 motion return date. MALC's application for relief from the June 30, 1997 Order sought an order "allowing additional time for each claimant to file a civil action in the Southern District of New York …" under Bankr.R. 9024, challenging the Order's time bars after that Order had been reviewed and in all pertinent parts affirmed by the District Court.

Such a motion for relief from an order which is based on "excusable neglect," whether under Bank.R. 9024 or Fed. R.Civ.P. 60(b), shall be made "not more than one year after the judgment, order, or proceeding was entered or taken." Fed.R.Civ.P. 60(b). MALC's application, made nearly two years after entry of the June 1997 Order, was simply too late.

Because Chief Judge Mukasey affirmed the June 1997 Order, MALC's appeal of that Order does not alter this outcome. *See Simon v. Navon,* 116 F.3d 1, 3 (1st Cir.1997) (The timeliness of a Rule 60(b) motion depends on whether on appeal, the appellate court "has disturbed or revised legal rights and obligations which, by [the] prior judgment, had been plainly and properly settled with finality.") (*quoting FTC v. Minneapolis–Honeywell Regulator Co.,* 344 U.S. 206, 212, 73 S.Ct. 245, 249, 97 L.Ed. 245 (1952)). MALC thus "stood in the exact position" after the appeal that it was in when the Order issued. *Transit Casualty Co. v. Security Co.,* 441 F.2d 788, 791 (5th Cir.1971) (*quoted in Simon,* 116 F.3d at 3). Bank. R. 9006(b)(2) specifically prohibits the enlargement of time for taking action under Rule 9024.

MALC has also urged that the Bankruptcy Court was authorized by Bankr.R. 9006 to extend the complaint filing deadlines of the June 1997 Order. Also, the complaint filing deadlines of the June 1997 Order which MALC wanted Judge Gonzalez to extend, included statutory deadlines (*i.e.,* statutes of limitations and 11 U.S.C. § 108(c)). Rule 9006, by its text, does not authorize a court to extend such deadlines. The Rule only empowers a court to extend deadlines created "by these rules or by a notice given thereunder or by order of court …" Bankr.R. 9006(b)(1).

As a factual matter, the Bankruptcy Court rejected the claim of "excusable neglect," concluding that MALC's actions resulted from its volume strategy. "[A]n attorney's failure to evaluate carefully the legal consequences of a chosen course of action provides no basis for relief from a judgment." *Nemaizer v. Baker,* 793 F.2d 58, 61 (2d Cir.1986).

Finally, MALC's application to modify the affirmed June 1997 Order was not filed until the eve of the June 22, 1999 hearing of the expungement motion.

MALC has cited *Pioneer Investment Services Co. v. Brunswick Associates Ltd. P.,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), a case which analyzed "excusable neglect" where a proof of claim was filed 20 days after an ordered bar date. "In assessing the culpability of respondents' counsel, we give little weight to the fact that counsel was experiencing upheaval in his law practice at the time of the bar date. We do, however, consider significant that the notice of the bar date provided by the Bankruptcy Court in this case was outside the ordinary course in bankruptcy cases … [W]e conclude that the unusual form of notice employed in this case requires a finding that the neglect of respondents' counsel was, under all the

circumstances, 'excusable.'" *Id.* at 398, 113 S.Ct. 1489. No procedural deficiency has been found here, thus *Pioneer Investment* is inapposite.

The Bankruptcy Court denied the MALC application at the June 22, 1999 hearing ("I have no intentions of modifying the [June 1997 Order] ... extending any time frames therein."). At a conference of August 4, 1999, Judge Gonzalez again addressed the matter, saying that "on both procedural grounds as well as substantive grounds" the June 1997 Order would not be modified.

The June 1997 Order, as affirmed, has an indisputably ample record of factual findings. Nothing new was presented to the Bankruptcy Court by June 22, 1999.

Under the March 2000 Order, individual claimants may still avail themselves of 11 U.S.C. § 502(j) reconsideration and "[a] claim that has been ... disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case." *Id.* Factually, the Bankruptcy Court has concluded that the volume strategy does not constitute such cause.

It might be contended that equitable tolling should be invoked in view of the fact that the venue issue was not resolved until the Court of Appeals' opinion of June 16, 2000. However, during the ensuing nine months no action was taken by MALC to comply with the June 1997 Order despite the pendency of the expungement motion. No adequate grounds for equitable tolling have been set forth.

### Redundant Claims Were Properly Barred

■ Paragraph 14 of the expungement order of the Bankruptcy Court precludes the filing of wrongful death claims:

14. MALC shall not, from and after the date of this Order, file asbestos claims which would in any way duplicate or in essence be a re-filing of any claims which are disallowed or expunged hereunder, including but not limited to any such claims based upon a claimant's death (either prior or subsequent to the date of this Order).

MALC has challenged as unauthorized the propriety of this bar to refiling a claim resulting from a claimant's death.

By order dated January 19, 1988, Bankruptcy Judge Buschman, with claimants' counsel's consent, nullified the claims of 498 MALC Asbestos Claimants. When MALC thereafter filed claims on behalf of 21 of the 498 previously nullified claimants, the Trust obtained an order dated June 9, 1993, expunging those 21 claims. In this 1993 order, it was mandated that the "Order dated June 19, 1988 bars future filing of proofs of claim by those named in the said Order or by their successors, heirs or representatives."

The March 2000 Order again disallows such claims. This provision does not impact on wrongful death claims or survival claims, except to the extent that such would be a reiteration of an already disallowed claim rather than a "new" claim.

■ In death cases, "[t]he Jones Act [46 App.U.S.C. § 688 [12]] ... creates two causes of action for negligence," *Burns v. Marine Transport Lines, Inc.,* 207 F.Supp. 276, 277 (S.D.N.Y.1962), "one for the loss and suffering of the injured person while he lived, and another for the pecuniary loss to the beneficiaries named in the act as a result of his death." *Baltimore & Ohio S.W.R. Co. v. Carroll,* 280

---

12. The Jones Act incorporates the statutory remedies provided to injured railroad workers by the Federal Employer's Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.*

U.S. 491, 494, 50 S.Ct. 182, 183, 74 L.Ed. 566 (1930) (citations omitted). When a seaman's injuries result in death, the Jones Act permits a personal injury action allowing named beneficiaries to recover the seaman's full pre-death losses, including pain and suffering. *St. Louis I.M. & S.R. v. Craft,* 237 U.S. 648, 35 S.Ct. 704, 59 L.Ed. 1160 (1915); 45 U.S.C. § 59. Such Jones Act survival action "accrue[ ] at the time of injury ..." *Burns,* 207 F.Supp. at 277.

 Jones Act wrongful death actions allow named beneficiaries to be compensated for their pecuniary losses, *Michigan Central R.R. Co. v. Vreeland,* 227 U.S. 59, 33 S.Ct. 192, 57 L.Ed. 417 (1913), and may be maintained in addition to survival action. *Craft,* 237 U.S. at 658, 35 S.Ct. at 706. "These action accrue[ ] at the time of death ..." *Carroll,* 280 U.S. at 495, 50 S.Ct. at 183 (*citing Reading Co. v. Koons,* 271 U.S. 58, 46 S.Ct. 405, 70 L.Ed. 835 (1926)). *Burns,* 207 F.Supp. at 277 (citations omitted). However, a Jones Act wrongful death action "is derivative and dependent upon the continuance of a right in the injured employee at the time of his death." *Flynn v. New York N.H. & H.R. Co.,* 283 U.S. 53, 56, 51 S.Ct. 357, 358, 75 L.Ed. 837 (1931) (*citing Vreeland,* 227 U.S. at 70, 33 S.Ct. at 196).

 Because of the derivative nature of the wrongful death cause of action, if the limitation period has run before death,

the wrongful death claim is lost. *Flynn,* 283 U.S. at 56, 51 S.Ct. at 358. Disallowance and expungement of a claim pursuant to the March 2000 Order for any reason, bars the subsequent filing of a derivative wrongful death claim based upon the same claimant's death. The March 2000 Order refers specifically to these circumstances.

 In addition to remedies available under the Jones Act, the federal maritime common law (the "General Maritime Law" or "GML") provides injured seamen during life with a personal injury cause of action, or in cases of death, with a wrongful death action.[13] *Moragne v. States Marine Lines, Inc.,* 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970); *Miles v. Apex Marine Corp.,* 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990). Such actions must be commenced within the three year limitations period of 46 App.U.S.C.A. § 763a. *Mackensworth v. S.S. American Merchant,* 28 F.3d 246 (2d Cir.1994). And, as with Jones Act wrongful death actions, GML wrongful death actions depend on the ability of the decedent to have maintained, as of the date of death, an action for the injuries.[14]

Here, claimants wrongful death limitations periods were analyzed, taking into account the date of death accrual date. Those claims which had not yet become time barred by the three-year limitation period—because the accrual date had been advanced from the date of manifestation to

---

**13.** The Jones Act remedies are based upon negligence liability. *Jacob v. City of New York,* 315 U.S. 752, 62 S.Ct. 854, 86 L.Ed. 1166 (1942). The General Maritime Law remedies are based upon the doctrine of unseaworthiness, which holds ship owners strictly liable for failure to furnish a safe vessel. *Mahnich v. Southern S.S. Co.,* 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561 (1944).

**14.** The preclusive effect of the Jones Act on General maritime Law is well-established by

*Miles,* 498 U.S. at 30–33, 111 S.Ct. 317. Its incorporation of FELA's wrongful death structure thus defines GML limitations. *Id.* *Distinguish Sea–Land Services v. Gaudet,* 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974) (allowing wrongful death action to decedent longshoreman's beneficiaries notwithstanding settlement of certain aspects of damages during life), a holding specifically limited to cases *not* implicating the Jones Act.

the date of death, or otherwise—were saved from the three year ground for disallowance by the specific terms of the March 2000 Order. However, time-barred wrongful death claims, like all other three-year time barred MALC Asbestos Claims, were disallowed and expunged.

In the final analysis, if a claim filed before the March 2000 Order cut-off date was disallowed under that Order and the claimant was then alive, no survival or wrongful death claim can in the future be filed because both types of claim are derivative. If a claim filed before the March 2000 Order cut-off date was disallowed, and the claimant has died before that disallowance, then the "new" running of the statute of limitations must be considered. Future claims will have to be analyzed on a claim-by-claim basis to accommodate the differing accrual points for "live," survival and wrongful death claim circumstances. In any event, the March 2000 Order is necessary and proper, precluding only the refiling of "spent" claims.

### No Modification of the March 2000 Order to Provide for a Master Complaint is Warranted

MALC has urged that the March 2000 Order be modified to permit the filing of a Master Complaint, citing Rule 8013 of the Rules of Bankruptcy Procedure:

> On an appeal the district court or bankruptcy appellate panel may affirm, modify or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings.

It is suggested that it would be appropriate to file a master complaint on behalf of some of the claimants who have not filed individual actions as was allowed and ordered by the Honorable Lawrence M. McKenna in the *Seatrain Lines, Inc.* Chapter 11 proceedings. Judge McKenna's order provided:

The alternative of individual complaints would, at this time, create substantial administrative burdens on this Court, the Judicial Panel on MultiDistrict Litigation ("JPML") and, should there be a transfer to the Eastern District of Pennsylvania, that transferor court.

The conditions are two. First, counsel for claimants must file, contemporaneously with the consolidated complaint (in some convenient form, such as an appendix to the complaint, and incorporate therein by reference,) an Initial Data Form of the type annexed as Exhibit 2 to Claimants' Reply, and containing the information contained in that example, for each individual named as a plaintiff in the consolidated complaint. Only thus can there become reasonable expectation of the individual allegations that any Court has a right to expect of a complaint, and that a defendant must have for even an initial evaluation of the claim. The second condition is that permission to file a consolidated complaint in this Court at this time is without prejudice to a direction by any court that may have responsibility for the claims (e.g. this Court, should the consolidated complaint not be transferred to the Eastern District of Pennsylvania or the Eastern District of Pennsylvania in the event of transfer, or again, this Court, upon remand from the Eastern District of Pennsylvania) that an individual complaint be filed as to any claim, or all claims, for any reason such court might find appropriate in its discretion. This Court is convinced that the foregoing disposition is consistent with the purpose of the Bankruptcy Court's order, will minimize administrative burdens on the courts involved and the JPML will, through flexibility, permit efficient management of the very large number of claims involved, in the spirit to the debtor.

As the Trust has pointed out, MALC has twice before been rebuffed in its efforts at a 1,000 plaintiff pleading in cases arising out of claims resulting from asbestos exposure. *Abdullah v. Acands, Inc.,* 30 F.3d 264 (1st Cir.1994), and *Aaberg v. ACandS, Inc.,* 152 F.R.D. 498 (D.Md.1994). In *Abdullah,* the First Circuit noted that MALC's complaint, filed on behalf of 1,000 seamen, failed to satisfy the requirements for joinder under Rule 20 because it gave "no indication of whether plaintiffs were injured while serving on the same vessels or during the same time periods; no indication of whether they were injured by exposure to the same asbestos-containing products or equipment, nor any specification of the products or equipment to which they were exposed." *Abdullah,* 30 F.3d at 269 n. 5.

Judge Weiner in his memorandum opinion and order of May 2, 1996, administratively dismissing all pending MALC asbestos cases, stated as follows:

A major obstacle [to settlement] occurs ... when either side displays a lack of trust or credibility, or becomes entrenched and confrontational, such as when the parties refuse to cooperate in the disclosure of basic information which informs all parties of the nature of the claims.

...

[I]t is the responsibility of counsel to only file those cases which are ripe and ready to proceed. To file cases by the thousands and expect the Court to sort out the actionable claims is improper and a waste of the Court's time.

Previously MALC asbestos claims have been expunged for lack of documentation in this district. In *In re Chateaugay,* Chief Bankruptcy Judge Lifland had required claimants to provide, in writing, "information relative to the claimed loss, including the alleged basis for ... liability, evidence supporting an injury as well as documentation support any other damages." [15] 1991 WL 60527, at *1 (S.D.N.Y. April 8, 1991). MALC did not comply. The Chief Judge stated that such documentation is of "special concern here in view of [MALC's] rather cavalier attitude toward presenting these claims and the relationship with the claimants themselves ... From the record here, these claims do not appear to be meritorious ..." *Id.* at *4.

The number of claims garnered by MALC and the prosecution of these claims emphasize the need for differentiation and specificity to counter the appearance of lack of merit.

In *O'Neill v. AGWI Lines,* 74 F.3d 93, 95 n. 1 (5th Cir.1996), the court noted the high volume practice of the founder of MALC, his telemarketing efforts, and his lack of attention to prosecuting cases. In *Abdullah, supra,* MALC represented 12,-000 claims which were dismissed for improper joinder and related conduct; *Aaberg, supra,* dismissed 999 of 1,000 MALC claims for improper joinder, and the remaining claim for failure to satisfy Fed. R.Civ.P. 8(a)(2)'s pleading requirements. *In re Leonard C. Jaques,* 972 F.Supp. 1070 (E.D.Tex.1997), set forth plaintiffs' counsel's tactics and behavior, nationwide, including incidents of refusing to comply with pretrial and discovery orders, forum

---

**15.** This information is similar to the documentary proof defined as "Settlement Documentation" per Judge Blackshear's 1993 Order. In *Chateaugay,* the asbestos claimants were required to complete forms which asked each claimant to furnish, among other things, medical records evidencing that the claimant was suffering from asbestosis and a statement of how the claimant calculated his damages. *In re Chateaugay,* 1991 WL 60527 (S.D.N.Y. April 8, 1991).

shopping, and other conduct. In *In re Waterman S.S. Corp.,* (200 B.R. 770, 777 (Bankr.S.D.N.Y.1996)), the court stated "MALC's evidence introduced at trial was not calculated to help us decide the issue [of date of first manifestation of asbestos-related illness]. Instead, it was more like trying to find the peanut under one of three shells in a sidewalk huckster's game."

So far the record does not reveal any significant specification of the 17,000 MARDOC cases (the Trustee has stated without contradiction that 30 have been reactivated) and none of the 2,935 sent to the Eastern District of Pennsylvania have been activated after their administrative dismissal.

■ The Rule 11 strictures are significant. Fed.R.Civ.P. 11(b) requires the following MALC representations regarding its pleading:

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery . . .

"Rule 11 explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed." *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 253 (2d Cir.1985).

Rules 8 and 11 require MALC to act more diligently than its "master complaint" would allow.

The bar dates established by the Bankruptcy Court as well as statutory limitations periods implicate the timing of manifestation of asbestos illness. Manifestation must thus be individually assessed by MALC, on a claim-by-claim basis, as a precursor to good faith pleading.

■ In addition, MALC, in practical effect, argues for relief from the filing fee requirements of 28 U.S.C. § 1914, a position no longer tenable, given the opinion of this Court and the May 1996 Order of the MDL Judge "that each case to be reinstated shall be accompanied with the payment of a filing fee, unless such case, both in its present form and on its earlier submissions, contained Jones Act claims *ONLY*" stating:

The Court has examined the prior policy of allowing these cases to be filed en mass without filing fees and finds that it is inappropriate to continue. This policy issue has been assigned by Chief Judge George W. White of the Northern District of Ohio to the MDL [Court]. Specifically, the Court notes that 28 U.S.C. § 1916 provides that certain seamen's suits may proceed without prepayment of costs, but that common law tort actions are not included therein. Plaintiff's counsel, without payment of any fees, has filed more than 17,000 cases. The costs applicable to these filings are great and the burden and cost to the court system has been considerable.

*In re Asbestos Products Liability Litigation (No. VI),* 1996 WL 239863, *5 (E.D.Pa.1996).

On May 13, 1996, pursuant to Judge Weiner's decision regarding filing fees, Chief Judge George W. White of the Northern District of Ohio issued an implementing order that "from this date on-

ward, no new maritime asbestos litigation complaint shall be accepted for filing by the clerk's office unless the complaint is accompanied with the payment of the appropriate filing fee or an affidavit stating that the complaint contains Jones Act claims only." Judge White's order continued:

> Furthermore, since it is clear that all additional maritime asbestos cases transferred to Judge Weiner in which there is insufficient medical or product exposure evidence are likely to be similarly dismissed, and in order to avoid incurring unnecessary expenses for the parties, parties in the MARDOC asbestos litigation are relieved from the duty of filing their answers until further notification.

*Ohio Asbestos Litigation,* Order No. 165 (May 13, 1996).

This Court has ruled that MALC's filing of 2,935 complaints should have included filing fees for maritime actions but withdrew the order because the cases had been transferred to the MDL Court. The issues surrounding mass tort liability continue to overwhelm the courts, particularly as to liability for the use of asbestos. While imaginative techniques may be warranted, the present set of rules and procedures must be satisfied as the previous discussion establishes. As matters now stand, it is difficult to envisage a satisfying solution absent reform by Congress. *See, e.g.,* Mullenix, Linda S., *Class Resolution Of The Mass–Tort Case: A Proposed Federal Procedure Act,* 64 Tx.L.Rev. 1039 (proposing a federal mass tort procedure act); Abraham, Kenneth S., *Individual Action and Collective Responsibility: The Dilemma of Mass Tort Reform,* 73 Va.L.Rev. 845; Jones, Edith H., *Rough Justice In Mass Future Claims: Should Bankruptcy Court Direct Tort Reform?,* 76 Tex.L.Rev.

1695 (analyzing mass tort reform in bankruptcy courts).

The circumstances of Judge McKenna's memorandum and order in *Seatrain, supra,* differ from those presented here. The *Seatrain* order was by consent and anticipated apparently bargained-for relief from claim individuation strictures, "including the amendment of any existing civil actions in which an Asbestos Claimant is a plaintiff to include the Debtor as a party defendant" Mem. and Order of Judge McKenna, p. 1, 12/22/98. There was no equivalent of the March 2000 Order in *Seatrain.* A modification of the March 2000 order to provide for a Master Complaint is not warranted.

***Conclusion***

For the reasons stated above, the Bankruptcy Court's March 2000 order is affirmed and leave to file a Master Complaint is denied.

It is so ordered.

Appendix

HEARING DATE: JUNE 22, 1999

TIME: 9:30 a.m.

(RULE 9013-1)

In re UNITED STATES LINES, INC.

UNITED STATES LINES (S.A.) INC.,

Debtors, :

Chapter 11

Case Nos. 86 B 12240 (AJG), 86 B 12241 (AJG)

Claim Nos. See Schedule A Attached

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

ORDER (I) DISALLOWING AND EXPUNGING MALC ASBESTOS CLAIMS WHICH MALC HAS FAILED TO DILIGENTLY PROSECUTE; (II) DISALLOWING

AND EXPUNGING THE HANLY CLAIM; (III) DISALLOWING AND EXPUNGING MALC ASBESTOS CLAIMS WHICH VIOLATE BAR DATE I; (IV) DISALLOWING AND EXPUNGING MALC ASBESTOS CLAIMS WHICH VIOLATE BAR DATE II; (V) DISALLOWING AND EXPUNGING MALC ASBESTOS CLAIMS FOR WHICH THE STATUTE OF LIMITATIONS HAS EXPIRED; (VI) DISALLOWING AND EXPUNGING MALC ASBESTOS CLAIMS FOR WHICH THE TRUST BEARS NO RESPONSIBILITY; (VII) DISALLOWING AND EXPUNGING MALC ASBESTOS CLAIMS FOR WHICH MALC HAS PROVIDED INCOMPLETE INITIAL DOCUMENTATION; (VIII) DISALLOWING AND EXPUNGING DUPLICATE MALC ASBESTOS CLAIMS; (IX) DISALLOWING AND EXPUNGING PREVIOUSLY NULLIFIED MALC ASBESTOS CLAIMS; AND (X) NOTIFYING MALC THAT ITS FUTURE FILING OF CLAIMS AGAINST THE TRUST WITHOUT PROCESSING THOSE CLAIMS AND LITIGATION IN A THOROUGH AND TIMELY MANNER AS PER THIS COURT'S 6/30/97 ORDER COULD RESULT IN FED. R. BANKR. P. 9011 PENALTIES.

PERTAINING TO CLAIM NOS.—SEE SCHEDULE A ATTACHED

Upon the motion of United States Lines, Inc. and United States Lines (S.A.) Inc. Reorganization Trust (the "Trust"), for an Order: (i) Disallowing and Expunging MALC Asbestos Claims Which MALC Has Failed to Diligently Prosecute; (ii) Disallowing and Expunging the Hanly Claim; (iii) Disallowing and Expunging MALC Asbestos Claims Which Violate Bar Date I; (iv) Disallowing and Expunging MALC Asbestos Claims Which Violate Bar Date II; (v) Disallowing and Expunging MALC Asbestos Claims for Which the Statute of Limitations Has Expired; (vi) Disallowing and Expunging MALC Asbestos Claims for Which the Trust Bears No Responsibility; (vii) Disallowing and Expunging MALC Asbestos Claims for Which MALC Has Provided Incomplete Initial Documentation; (viii) Disallowing and Expunging Duplicate MALC Asbestos Claims; (ix) Disallowing and Expunging Previously Nullified MALC Asbestos Claims; and (x) Notifying MALC That its Future Filing of Claims Against the Trust Without Processing Those Claims and Litigation in a Thorough and Timely Manner as per this Court's 6/30/97 Order Could Result in Fed. R. Bankr.P. 9011 Penalties, and a hearing having been held before this Court on June 22, 1999 at which counsel for the Trust and the Maritime Asbestosis Legal Clinic ("MALC") appeared, and due deliberation being had thereon, including having considered the following:

A motion was filed by the Trust in August 1996 seeking the expungement of the claims or the lifting of the stay on litigation. After a number of hearings the Court read a decision into the record on June 5, 1997 finding the following:

"[A]lthough there is a great deal of support for such action (the expungement of claims at that time), a less drastic remedy appears more appropriate under the circumstances . . . ."

"However, the Court grants that portion of the Trustee's motion that seeks to lift the restraint on litigation and related relief."

"[T]hat MALC's settlement strategy over the last four years included failing to produce any documentation other than the initial documentation. Thus, it chose to go forward with settlement negotiations but not in accordance with the terms of the June 1993 Order (Blackshear, J.). But that strategy was risky, and has proved unwise."

"MALC's cry that it needs the continued restraint on litigation rings hollow to the Court. The Court finds that MALC had the ability to demonstrate its desire to resolve the claims through the settlement process provided in the June 1993 Order

(Blackshear, J.), but it chose to pursue a path that was apparently premised on the theory that the sheer volume of the claims would force a settlement without the necessity of producing the additional documentation as provided for in the June 1993 Order."

"The stalemate that has plagued this case must be ended. There is no longer any cognizable justification for the restraint on litigation."

The Trust was directed to settle the order. The order was settled upon MALC. MALC responded in an objection filed on June 12, 1997, *inter alia*, stating that it would need six (6) weeks to file the 15,000 civil actions to comply with the time periods as set forth in paragraph 9 of the proposed order. Paragraph 9 in the proposed order provided that "Each MALC Claim relieved of any persisting injunction against litigation, pursuant to the terms of paragraphs 6,7, or 8 above, must become the subject of a properly filed Civil Action Complaint against the Trust, meeting the requirements of 28 U.S.C. § 157(b)(2) (that is filed in the District Court for the Southern District of New York) at the earlier of (a) 90 days following the effective date of the relief from said injunctions or (b) the day preceding the date when the applicable statute of limitation runs after taking account of 11 U.S.C. § 108(c)(2)." Based upon the objection to the settled order filed by MALC, paragraph 9 was changed to read "Each MALC Claim relieved of any persisting injunction against litigation, pursuant to the terms of paragraphs 6,7, or 8 above, must become the subject of a properly filed Civil Action Complaint against the Trust that is filed in the District Court for the Southern District of New York at the earlier of (a) 90 days following the effective date of the relief from said injunctions or (b) the day preceding the date when the applicable statute of limitation runs after taking account of 11 U.S.C. § 108(c)(2)."

MALC stated in its objection that the thirty (30) day period under § 108(c)(2) applied to most of the claims and therefore it would need a full six (6) week period after the entry of the order to file the 15,000 civil actions necessary to satisfy the time period established under paragraph 9 of the order. The Court scheduled a hearing two weeks later and then signed the June 1997 Order on June 22, 1997 thereby effectively providing MALC with the full six (6) weeks it sought to file the civil complaints for those claims in which the statute of limitations had expired and were then governed by the thirty (30) day period under § 108(c)(2).

On July 25, 1997 MALC sought a stay pending appeal and sought no interim relief pending hearing. The hearing was held on August 8, 1997. At that time the thirty (30) day period under § 108(c)(2) had clearly run, there was no action this Court could have taken at that time, even if it had the authority to toll the § 108(c)(2) period. Further, the Court did not stay the running of the ninety (90) day period based upon MALC's failure to take any action to satisfy that requirement. At the conclusion of the hearing the Court denied MALC's request for a stay. In an Opinion and Order dated July 9, 1998, the District Court affirmed the June 1997 Order. Although various attempts have been made by MALC before this Court to modify the June 1997 Order all such efforts have been unsuccessful.[1] And further,

---

1. The Court notes that MALC has appealed a District Court Order and Opinion, dated April 19, 1999, denying MALC's request to file a

"Master Motion" "to avoid the cost—in time and money-associated with filing some 15,000 separate actions in this District by filing a

based upon the foregoing sufficient cause appearing therefore,

THE COURT HEREBY FINDS that:

1. The claimants listed on Exhibit A hereto (and identified there by the "90 day Bar" reference) have each failed to file a Civil Action Complaint within the 90 day period permitted by paragraph 9 of this Court's Order (i) Establishing Bar Date For All Previously Manifested Asbestos and Other Claims; (ii) Providing for Lifting of Restraint on Litigation Relating to Both Undocumented and Fully Documented but Unsettled MALC Asbestos Claims; and (iii) Requiring That Any MALC Asbestos Claims That are to be Litigated be the Subject of Application to the District Court of this District per 28 U.S.C. § 157(b)(5) and Carry With It the Recommendation of the Bankruptcy Court That There Be Referral To the Applicable Multi–District Litigation (the "6/30/97 Order").

2. MALC has failed to re-file the Hanly claim within 30 days following its MDL dismissal as required by paragraph 10 of the 6/30/97 Order.

3. The claimants listed on Exhibit B hereto (and identified there by the "Bar Date I" reference), whose claims manifested pre-petition, failed to file a proof of claim before November 25, 1987, this Court's initial time bar ("Bar Date I") (Buschman, J.)

4. The claimants listed on Exhibit B hereto (and identified there by the "Bar Date II" reference), whose claims manifested post-petition, failed to file a proof of claim before October 31, 1997, this Court's second time bar ("Bar Date II").

5. The claimants listed on Exhibit A hereto (and identified there by the "3 year Bar" reference) failed to file a Civil Action Complaint within the applicable statute of limitations period (as augmented by 11 U.S.C. § 108(c)(2)), as required by paragraph 9 of the 6/30/97 Order.

6. The claimants listed on Exhibit C hereto (and identified there for that purpose), never sailed on any Trust predecessor vessels.

7. The claimants listed on Exhibit C hereto sailed (and identified there for that purpose), only on Robin Line vessels which were never acquired by Trust predecessors, and for which the Trust bears no responsibility.

8. The claimants listed on Exhibit C hereto (and identified there for that purpose), sailed only on vessels owned and operated by the United States Government during war years, and for which the Trust bears no responsibility.

single motion in the Eastern District of Pennsylvania to join [United States Lines, Inc. and United States Lines (S.A.)] as a party-defendant in appellants' other cases pending there. In addition, appellants move[d] for an order granting those claimants 'who do not have civil actions pending in federal court' leave to file actions in the U.S. District Court for the Northern District of Ohio." *In re United States Lines, Inc.,* No. 97 CIV.6727, 1999 WL 225533 (S.D.N.Y. Apr.19, 1999). The appeal is currently pending before the Circuit. Further, MALC filed a number of civil actions in the District Court of the Southern District of New York that were transferred to the MDL and are currently pending there. Neither the request for the Master Motion nor the filing of the civil actions occurred prior to the stated expiration of the time periods set forth in the June 1997 Order. Based upon the arguments of the parties, the Court has determined that MALC's aforementioned actions do not impact the finality of the Court's June 1997 Order and the consequences that can flow from a failure to comply with that order. Nor does the Court believe that the pendency of these actions in any manner limit the Court's authority to act upon MALC's failure to comply with the June 1997 Order.

9. The claimants listed on Exhibit D hereto (and identified there for that purpose), failed to provide complete and adequate "Initial Documentation," as defined by this Court's Order dated June 9, 1993 (Blackshear, J.).

10. The claims listed on Exhibit D hereto (and identified there for that purpose), are duplicate claims.

11. The claims of claimants listed on Exhibit D hereto (and identified there for that purpose), were previously nullified by this Court's Order dated January 19, 1988 (Buschman, J.).

12. MALC has demonstrated over a protracted period, (i) its refusal to abandon a claim settlement strategy based upon its volume of claims, (ii) a stubborn refusal to document its claims for settlement purposes, and (iii) a stubborn refusal to meet the diligent complaint filing requirements of this Court's Order of 6/30/97.

The tragedy that befalls the victims, and their families, who are afflicted with diseases related to asbestos cannot be overstated. The possibility that some of the claimants whose claims are expunged under this order may have been able to provide documentation that would have warranted a recovery on their claim has been considered by the Court. However, this Court cannot ignore the fact that a system of law that allows itself to repeatedly excuse compliance by those who seek its benefit but refuse to heed its warnings is a system of law that compromises its integrity and thereby undermines its credibility. This Court must hold the claimants accountable for their failure to comply with its orders. Further, to the extent equity would warrant such consideration on a case by case basis, a claimant may be able to seek redress under § 502(j).

Therefore, it is hereby ORDERED THAT:

1. Those previously disputed claims of claimants listed on Exhibit A hereto (and specifically identified there by the "90 day Bar" reference), be and are hereby disallowed and expunged based upon the failure of the designated claimants to adhere to the 90 day diligent complaint filing requirements of paragraph 9 of the 6/30/97 Order.

2. The previously disputed claims of William M. Hanly, designated as claim numbers 02591800, 02715900, 0297200, 0298100 and now the subject of *Creighton E. Miller, Administrator of the Estate of William M. Hanly v. United States Lines, Inc. and United States Lines (S.A.) Inc. Reorganization Trust*, S.D.N.Y. Docket No. 97 Civ. 3436, be and are hereby disallowed and expunged based upon the failure of this claimant to adhere to the diligent case prosecution requirements of paragraph 10 of the 6/30/97 Order.

3. Those previously disputed claims of claimants listed on Exhibit B hereto (and identified there by the "Bar Date I" reference), be and are hereby disallowed and expunged based upon the failure of each of the designated claimants to file a Proof of Claim, as was required of these claimants, by November 25, 1987 (the initial Court ordered time bar, or "Bar Date I" (Buschman, J.)).

4. Those previously disputed claims of claimants listed on Exhibit B hereto (and identified there by the "Bar Date II" reference), be and are hereby disallowed and expunged based upon the failure of each of the designated claimants to file a Proof of Claim, as was required of these

claimants, by October 31, 1997 (the second Court ordered time bar, or "Bar Date II").

5. Those previously disputed claims of claimants listed on Exhibit A hereto (and specifically identified there by the "3 year Bar" reference) be and are hereby disallowed and expunged based upon the failure of each of the designated claimants to file a civil action complaint therefor, within the applicable statutory period of limitations, as augmented by 11 U.S.C. § 108(c)(2) (*provided, however,* that where specifically indicated on Exhibit A, wrongful death aspects of the listed claims are *not* disallowed and expunged based upon such limitations).

6. Those previously disputed claims of claimants listed on Exhibit C hereto (and identified here for that purpose) be and are hereby disallowed and expunged based upon the failure of each of the designated claimants to demonstrate a sailing history on Trust predecessor vessels.

7. Those previously disputed claims of claimants listed on Exhibit C hereto (and identified there for that purpose) be and are hereby disallowed and expunged because each of the designated claimants sailed only on Robin Line vessels which were never acquired by Trust predecessors, and for which the Trust bears no responsibility.

8. Those previously disputed claims of claimants listed on Exhibit C hereto (and identified there for that purpose) be and are hereby disallowed and expunged because each of the designated claimants sailed only on vessels operated by the United States Government during war years, and for which the Trust bears no responsibility.

9. Those previously disputed claims of claimants listed on Exhibit D hereto (and identified there for that purpose) be and are hereby disallowed and expunged based upon the failure of each of the designated claimants to provide complete and adequate "Initial Documentation," as defined and required by this Court's Order dated June 9, 1993 (Blackshear, J.), and as required by paragraph 7 of the 6/30/97 Order.

10. Those previously disputed claims of claimants listed on Exhibit D hereto (and identified there for that purpose) be and are hereby disallowed and expunged because each of the designated claims is a duplicate claim.

11. Those previously disputed claims of claimants listed on Exhibit D hereto (and identified there for that purpose) be and are hereby disallowed and expunged because each of the designated claimants' claims was previously nullified by this Court.

12. MALC be and is hereby formally notified that its filing of any claims against the Trust from the date of this Order forward, which are not processed and, if not settled, placed in litigation, all in a thorough and timely manner as per this Court's 6/30/97 Order, could result in the assessment of penalties pursuant to Fed. R. Bankr.P. 9011 (as well as disallowance and expungement of such claims).

13. MALC shall, as to all remaining and currently disputed but not disallowed asbestos claims, comply with all Orders of this Court including that of 6/30/97; failure to meet

the documentation and complaint filing requirements of that Order, shall be the appropriate basis for disallowance and expungement of MALC Asbestos Claims.

14. MALC shall not, from and after the date of this Order, file asbestos claims which would in any way duplicate or in essence be a re-filing of any claims which are disallowed and expunged hereunder, including but not limited to any such claims based upon a claimant's death (either prior or subsequent to the date of this Order).

Dated: New York, New York

March 8, 2000

s/Arthur J. Gonzalez

HONORABLE ARTHUR J. GONZALEZ, U.S.B.J.

### ERRATA ORDER

**ORDERED,** that the

ORDER (I) DISALLOWING AND EXPUNGING MALC ASBESTOS CLAIMS WHICH MALC HAS FAILED TO DILIGENTLY PROSECUTE; (II) DISALLOWING AND EXPUNGING THE HANLY CLAIM; (III) DISALLOWING AND EXPUNGING MALC ASBESTOS CLAIMS WHICH VIOLATE BAR DATE I; (IV) DISALLOWING AND EXPUNGING MALC ASBESTOS CLAIMS WHICH VIOLATE BAR DATE II; (V) DISALLOWING AND EXPUNGING MALC ASBESTOS CLAIMS FOR WHICH THE STATUTE OF LIMITATIONS HAS EXPIRED; (VI) DISALLOWING AND EXPUNGING MALC ASBESTOS CLAIMS FOR WHICH THE TRUST BEARS NO RESPONSIBILITY; (VII) DISALLOWING AND EXPUNGING MALC ASBESTOS CLAIMS FOR WHICH MALC HAS PROVIDED INCOMPLETE INITIAL DOCUMENTATION; (VIII) DISALLOWING AND EXPUNGING DUPLICATE MALC ASBESTOS CLAIMS; (IX) DISALLOWING AND EXPUNGING PREVIOUSLY NULLIFIED MALC ASBESTOS CLAIMS; AND (X) NOTIFYING MALC THAT ITS FUTURE FILING OF CLAIMS AGAINST THE TRUST WITHOUT PROCESSING THOSE CLAIMS AND LITIGATION IN A THOROUGH AND TIMELY MANNER AS PER THIS COURT'S 6/30/97 ORDER COULD RESULT IN FED. R. BANKR. P. 9011 PENALTIES

dated March 8, 2000, be changed as follows:

1. Page 4, first full paragraph, fourth line: delete "The Court scheduled a hearing two weeks later and then signed the June 1997 Order on June 22, 1997 thereby effectively providing MALC with the full six (6) weeks it sought to file the civil complaints for those claims in which the statute of limitations had expired and were then governed by the thirty (30) period under § 108(c)(2)." and insert "The Court scheduled a hearing for June 22, 1997 and then signed the June 1997 Order on June 30, 1997, entered on the docket July 7, 1997, effectively providing MALC with the full six (6) weeks it sought to file the civil complaints for those claims in which the statute of limitations had expired and were then governed by the thirty (30) day period under § 108(c)(2)."

### CHRONOLOGY [1]

November 24, 1986 Debtors file voluntary petition for reorganization under Chapter 11. Aff.III [2] ¶ 2.

---

1. This detailed chronology outlines proceeding events from the November 24, 1986 filing of the Chapter 11 Petition through the August 17, 2000 Order of the MDL administratively dismissing MALC's pending cases, with references to the record on appeal.

2. Aff.I–IV are included in R.31.

| | |
|---|---|
| September 16, 1987 | Order Fixing Bar Date I. Filed 9/16/87; EOD 9/18/87; Doc. No. 990. Aff.I Ex.A. |
| November 25, 1987 | Bar Date I for, among various claims, asbestos claims manifesting before November 24, 1986. Aff.I Ex.A. |
| January 19, 1988 | Bankruptcy Judge Buschman issues Order Modifying the Automatic Stay which *inter alia* nullifies the claims of those MALC asbestos claimants with actions then pending in the Northern District of Ohio. Filed 1/19/88; EOD 1/27/98; Doc. No. 1216. Aff.II Ex.A. |
| February 23, 1990 | Trust established as successor-in-interest to the Debtors to, among other things, administer current and future asbestos and other bodily injury claims. Aff.III ¶ 2. |
| April 18, 1990 | With respect to all personal injury, tort and wrongful death claims against the Debtors, the bankruptcy court issues an order imposing a stay of such litigation against the Trust until the Trust has an opportunity to review claims documentation. Filed 4/19/90; EOD 4/20/90; Doc. No. 4014. Aff.III. Ex.F. |
| October 17, 1990 | Bankruptcy Judge Buschman issues order allowing a lifting of the stay 30 days after MALC provides adequate documentation and requiring the Trust to move to keep the stay, if it deems MALC documentation inadequate. Filed 10/9/90[sic]; EOD 10/23/90; Doc. No. 4138. Aff.III Ex.G. |
| October 24, 1990 | Hearing before Judge Bushman regarding documentation issues. Transcript EOD 11/14/90; Doc. No. 4155. Aff.III Ex.H. |
| Summer 1991 | Trust efforts to settle a sample of 71 MALC Asbestos Claims fail because of MALC's refusal to provide adequate documentation. Aff.III ¶ 9. |
| July 29, 1991 | MDL Order consolidates over 26,000 federal asbestos matters into the United States District Court for the Eastern District of Pennsylvania (Judge Weiner). Aff.III Ex.I. |
| November 25, 1992 | MALC moves for an order permitting 62 of its clients to litigate against the Trust in the U.S. Virgin Islands. Aff.III ¶¶ 13–15. |
| December, 1992 | Trust settles 106 asbestos claims filed by Dickstein, Shapiro & Morin, contingent upon Club coverage. Order approving settlement filed 12/9/92; EOD 12/10/92; Doc. No. 4368. Aff.I Ex.A. |
| December 9, 1992 | MDL issues order inviting close cooperation between the MDL and bankruptcy courts involved with asbestos claims. Aff.III Ex.J. |
| January 5, 1993 | Trust commences adversary proceeding against Debtors' maritime insurers. Aff.III ¶ 11. |
| February 11, 1993 | MALC withdraws its motion for permission to litigate 62 asbestos claims in the U.S. Virgin Islands. Aff.III ¶ 14. |
| August, 1999 | MALC files 2,935 Complaints in United States District Court for the Southern District of New York. R.43,45,46 and 49. |

| | |
|---|---|
| August 4, 1999 | Status Conference before Honorable Arthur J. Gonzalez, Bankruptcy Judge. Record of 6/22/00 hearing deemed closed. Transcript filed 3/22/00; EOD 3/22/00; Doc. No. 5165. R.57. |
| August 23, 1999 | Order Denying Motion of MALC Asbestos Claimants to Extend Time to File Civil Actions as Provided in Order of June 30, 1997. Filed 8/23/99; EOD 8/23/99; Doc. No. 5133. R.48 |
| September 10, 1999 | MALC files Motion to Re–Open Record, Take Judicial Notice of United States Lines Trust's Submission and Consider Further Argument. Filed 9/10/99; EOD 9/15/99; Doc. No. 5135. R.50 |
| October 6, 1999 | Hearing re: Motion by MALC to Re–Open Record, Take Judicial Notice of United States Lines Trust's Submission and Consider Further Argument. Transcript filed 2/28/00; EOD 2/28/00; Doc. No. 5154. R.59 |
| October 18, 1999 | Order Denying Motion to Re–Open Record, Take Judicial Notice of United States Lines Trust's Submission and Consider Further Argument. Filed 10/18/99; EOD 10/18/99; Doc. No. 5142. R.56 |
| November 18, 1999 | District Court Order re: Requirement for MALC to Pay Filing Fees. Filed 3/22/00; EOD 3/22/00; Doc. No. 5164. R.58 |
| March 8, 2000 | Order Disallowing and Expunging Certain MALC Claims (hereinafter "3/8/00 Order") granting Trust relief per May 18, 1999 Motion. Filed 3/8/00; EOD 3/8/00; Doc. No. 5155. R.60 |
| March 10, 2000 | Errata Order. Filed 3/10/00; EOD 3/10/00; Doc. No. 5156. R.61 |
| March 16, 2000 | Notice of Appeal of 3/8/00 Order Disallowing and Expunging Certain Claims. Filed 3/16/00; EOD 3/17/00; Doc. No. 5163. R.62 |
| June 16, 2000 | Court of Appeals affirms District Court decision of April 19, 1999 (which had denied MALC "Master Motion" request), 216 F.3d 228. |
| August 17, 2000 | MDL Judge Weiner Orders administrative dismissal (w/o prejudice) of 2935 MALC cases filed against Trust. *See* Ex. B hereto. |